### BARRELL vs. HANRICK, ADM'R, ET AL.

[BILL IN EQUITY TO ESTABLISH SECRET PAROL TRUST.]

1. *Parol trust.*—The provisions of the statute, Code, (1852,) § 1320, (Revised Code, § 1590,) were intended to prevent fraud, and in *avoidance of a fraud*, a parol trust may be engrafted upon an instrument which purports to be absolute on its face, notwithstanding the prohibition of the statute ; and in order to constitute fraud, and suspend the operation of the statute there need not be deceit, or misrepresentation, or evidence that the subsequent failure to fulfil the trust was the result of an original fraudulent design ; and the failure to execute such a trust, from whatever cause, is a constructive fraud against which equity will grant relief.

2. *Confederate States confiscation acts.*—This court being a co-ordinate branch of the rightful State government of Alabama, forming a part of the United States, cannot entertain such an objection as this : "That the bill cannot be entertained, as it sets out on its face that the agreement from which springs the trust was made with a view to evade the confiscation acts of the government of the Confederate States, and that therefore the appellant does not come into equity with clean hands."

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. N. W. COCKE.

The bill in this case was filed on the 8th day of March, 1866, by George Barrell, a citizen of the State of New Jersey, and sought to establish in favor of complainant a secret parol trust, in the real and personal estate of which Charles Barrell, his brother, died seized and possessed, and which was devised by his will to Edward Hanrick. Edward G. Hanrick, as administrator of said Edward Hanrick, and individually, Henry F. Barrell, brother of Charles Barrell, Miss Olivia Benson and Miss Louisa

Barrell v. Hanrick, adm'r, et al.

Henry, (formerly Miss Louisa Benson,) legatees under the will of said Charles Barrell and W. G. Waller, administrator *de bonis non*, with the will annexed of said Charles Barrell, were made parties defendant to said bill.

On the 2d of February, 1863, said Charles Barrell executed his will, and on the 19th of August, 1863, he added to said will a codicil, and said will and codicil were on the 22d January, 1864, admitted to probate in the probate court of Montgomery county, as the last will and testament of said Charles Barrell. Edward Hanrick was named in said instrument as the sole executor thereof, with full power and discretion to sell, use and dispose of the property therein bequeathed to him, in any way that he might see proper, and qualified as such executor on the 30th January, 1864. Said Edward Hanrick died intestate on the 3d of September, 1865, and Edward G. Hanrick, the only legal heir and next of kin of said Edward Hanrick, qualified as his administrator.

The material facts of the case, so far as they are necessary to a correct understanding of the legal questions here decided, are stated in the opinion of the court. The chancellor dismissed the bill, so far as it sought to set up and establish in favor of complainant a trust in the real estate, of which said Charles Barrell died seized and possessed, and which was devised by his will to Edward Hanrick, deceased, but sustained in the bill so far as it is sought to set up and establish in favor of complainant, a trust in the personal estate of said Charles Barrell, bequeathed by the said will to said Edward Hanrick, and declared and established said trust in said personal estate. From this decree both parties appealed to this court, and by consent there were cross assignments of error.

MARTIN & SAYRE, and ELMORE, KEYES, and MORRISSETT, for appellants.—I. Under the English law there were three reasons why a parol trust could not be attached to an absolute devise of realty.

1. The seventh section of the statute of frauds, which declares that all declarations or creations of trusts or confidences of any lands, &c., shall be void and of none effect,

unless they shall be manifested and proved by some writing signed by the party creating them.

2. The fifth section of the same statute, which requires devisees of lands, &c., to be in writing and signed by the party devising, or by some one in his presence, and by his direction.

3. "A devise, as was resolved in Vernon's case, implies a consideration, and therefore cannot be averred to the use of another; for *that,* observes Lord Chief Baron ·Gilbert, were an averment contrary to the design of the will appearing in the words; and accordingly in Lady Portington's case, the court of King's Bench refused to admit evidence against the devisees, both from the statute of frauds, and also from the *nature of thething.*"—Lew. on Trusts, 33. The objection is the familiar rule, that parol testimony is inadmissible to vary, explain, or add to, a written contract.

II. There is another section of the statute of 29 Car. 2, which declares that a will of personal estate shall be in writing, and it follows, says Lewin, that a trust of realty or personalty cannot be created without the observance of the same respective solemnities.—Lewin on Trusts, 31.

III. It is held in England, that the seventh section of the statute of frauds does not require a trust of realty to be created by writing, but only to be manifested and proved by writing.—*Forster v. Hale,* 3 Ves. 696. But the difference, if any exists, must be exceedingly *thin,* between a trust being void if not created by writing, and a trust being void if not manifested and proved by writing. *Quod non apparet non est.*

But admitting the distinction to exist, and giving to it all its force, still it is immaterial; for declarations of trusts to be attached to absolute devises "are in truth of a testamentary character."—*Habugham v. Vincent,* 2 Ves. 204; and must, therefore, be made according to the fifth section of 29 Car. 2, c. 3., commonly called the statutes of frauds; because "the absolute owner of property combines in himself both the legal and equitable interests; and when the legislature enacts that no devise or bequest of property shall be valid without ceremonies, a testator cannot by an informal instrument" (nor by parol) "affect the equitable

any more than the legal estate, for the one is a constituent part of the ownership as much as the other."—Lewin on Trusts, 32.

IV. The statute of Alabama, Code, § 1320, declares that "no trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney lawfully authorized thereto in writing."

The eighth section of the English statute of frauds, makes the same exceptions that are made in our statute, *and it follows from what has been said, that parol trusts, to be attached to absolute devises, stand upon the same footing in England and in this State.*

V. In *Strickland v. Aldridge,* 9 Ves. 519, Lord Eldon said: "If a father devises to his youngest son, who promises, that if the estate is devised to him, he will pay £10,000 to the eldest son, this court would compel the former to discover whether *that* passed in parol; and if he acknowledged it, even praying the benefit of the statute, he would be a trustee to the value of £10,000; and then why, upon a similar principle, should not a trust be raised as to the whole value of the estate, the promise extending to the whole?" And in a previous part of the same opinion, his lordship had said: "The statute was never permitted to be a cause for fraud upon the private rights of individuals; and, within the limitation, it cannot be said a trust is declared under these circumstances," (a parol agreement between devisor and devisee, that a trust should be attached to the devise;) "it is clear, a trust would be created, upon the principle on which this court acts as to fraud."

"And if the defendant deny the trust by his answer, the fact may in this, as in other cases of fraud, be established against him by the production of parol evidence."—Lew. on Trusts, 39; citing *Kingsman v. Kingsman,* 2 Vern. 559; *Pring v. Pring,* 2 Vern. 99.

"The court will not permit the statute against frauds to be converted into an engine of fraud, and, therefore, if the devise or bequest of a legal estate be accompanied with

any *mala fides* in the devisee or legatee, as if there be an express or implied undertaking to execute the intent, the court will in that case establish the trust, notwithstanding the statute.—Lewin on Trusts, 38 ; citing many cases. See also, *Podmore v. Gunning*, 7 Sim. 644.

"Wherever the relief sought arises from the fraud and imposition of the defendant, it has nothing in the world to do with the statute of frauds and perjuries."—*Kennedy v. Kennedy*, 2 Ala. 594. And in the same case, the chief justice, in delivering the opinion of the court, says, in commenting upon *Lloyd v. Spillet*, Barnardiston, 384 : "The parol testimony was held to be admissible, on the ground that the breach of trust in Lawrence Saltar, was *a fraud in law*, which was not within the act, and a judgment was entered for the plaintiff. Here, it may be observed, that there was no proof from which an actual fraud could be imputed to Lawrence Saltar, for he always managed the property as if it belonged to the lessors of the plaintiff, and even *in extremis* expressed uneasiness that he was about to die without having made a will ; yet the court considered the failure to perform the promise made to his wife to be a fraud in law, and wrested the property from his heirs."

In *Drakeford v. Wilks*, 3 Atk. 539, Lord Hardwick said : "It has been truly said by Mr. Wilbraham, it is dangerous to set up parol trusts of personal estate, as well as real estate, since the statute ; and that the court will not suffer parol declarations to be set up in opposition to the will. But if there is a declaration and undertaking by a legatee to do an act, in consideration of the testator's devising to that legatee, I know no case where the court has not secured it, whether such undertaking was before the will has been made or after. The case of *Thyme v. Thyme*, 1 Vern. 296, and *Jones v. Nabbs*, Pasch. 1718 ; Eq. Cas. Ab. 405, depended upon the undertaking and promise of the person who was to receive the benefit by the will. This is not setting up anything in opposition to the will, but taking care that what has been undertaken shall have its effect; a will being ambulatory, if the testatrix has a conversation with a legatee, and the legatee promises that in

consideration of the testator's disposition in favor of her, she will do an act in favor of a third person, and the testatrix lets the will stand, it is very proper the person who undertook to do the act should perform, because I must take it, if Mrs. Ann Wilks had not so promised, the testratrix would have altered her will."

The counsel *arguendo, Podmore v. Gunning*, 7 Sim. 644, says : "The statute says that every will must be in writing, but if a person obtains property under a will upon a parol assurance that he will dispose of it in a particular way, this court will not allow him to keep the property.—*Strickland v. Aldridge*, 9 Ves. 516 ; *Devenish v. Baines*, Pric. Cha. 3 ; *Thyme v. Thyme*, 1 Vern. 505 ; *Chamberlain v. Agar*, 2 V. & B. 259; *Mucklestone v. Brown*, 6 Ves. 52 ; *Reach v. Kennigate*, Amb. 67 and 1 Ves. 123 ; *Drakeford v. Wilks*, 3 Atk. 559 ; *Chamberlain v. Chamberlain*,- 2 Freem. 52 ; *Sellach v. Harris*, 5 Vin. Ab. 521 ; *Buckley v. Wilford*, 8 Bligh's N. R. 111 ; *Seagrave v. Ruwan*, 1 Beat. 157 ; *Walker v. Walker*, 2 Atk. 98 ; *Dixon v. Almins*, 1 Cox, 414. These cases show that the doctrine of this court is applied to real as well as to personal estate. "The cases," they add, "on the ship registry acts are still stronger, for those acts were passed on grounds of public policy, and not for protecting the rights of individuals." —*Mytan v. Gillispie*, 11 Ves. 621. See the vice chancellor's opinion in *Podmore v. Gunning*, concurring with the council for the plaintiffs, and refusing relief only for the want of testimony to establish the agreement.

In *Hoge v. Hoge*, 1 Watts, 163, chief justice Gibson says : "The trust invested in him, however, owes its validity, not to the will or the declaration of the testator, but to the fraud of the devisee. It belongs to a class in which the trust arises *ex maleficio*, and in which equity turns the fraudulent procurer of the legal title into a trustee to get at him ; and there is nothing in reason or authority to forbid the raising of such a trust, from the surreptitious procurement of a devise,"—p. 214. He further says : "The question has been, as to the circumstances which constitute such a fraud as will be made the foundation of a decree ; a mere refusal to perform the trust is undoubtedly not enough;

else the statute which requires a will of land to be in writing would be altogether inoperative; and it seems to be requisite that there should appear to have been an agency, active or passive, on the part of the devisee in procuring the devise. In *Whitton v. Russell*, 1 Atk. 488, it was thought, by high authority, that even a promise to the testator to perform the trust was not such an agency, because, as it was said, the fraud, if any, consisted not in the procurement of the will, but in the subsequent refusal to perform it; and that every breach of promise is not a fraud. But it was also thought that the testator had not, in fact, been drawn in to make the will by the promise; and on no other ground is the decision to be reconciled to *a train of authorities by which it is conclusively established, that if he has executed his will on the faith of such a promise, the devisee shall be compelled to make it good.*"—P. 214, 215. After stating the cases, he adds: "I have cited these authorities with a particular reference to their circumstances, to show that the difference taken in the argument between real and personal estate, is without foundation. The principle of the relief to be granted, is very satisfactorily disclosed by Lord Hardwicke in *Reech v. Kennegal*, 1 Ves. 12, where," &c. See, also, *Kisler v. Kisler*, 2 Watts, 323; *Robertson v. Robertson*, 9 Watts, 32; Brown on Frauds, § 94, more particularly § 107; Crabb on R. Prop. § 1768. "Parol agreement *varied* from in a deed of trust executed in order *to avoid a seizure by the sequestrators* in the life of Cromwell, decreed three several times by three several persons to be made good, though contrary to the deed."—5 Vin. Ab. 518, § 12. And see *Bryan & McPhail v. Cowart*, 21 Ala. 92, and subsequent cases.

VI. The Code, § 1320, expressly excepts such trust "as results by implication or construction of law," and the trust in this case is a trust resulting by implication or construction of law.—See Browne on Frauds, § 84, § 94. See, also, *Robertson v. Robertson*, 9 Watts, 32; *Lloyd v. Spillet*, Barnardiston, 384.

These implied trusts may be established by parol.— Browne on Frauds, § 84; *Caple v. McCullom*, 27 Ala. 461; *Boyd v. McLean*, 1 John. Ch. 582; *Kennedy v. Kennedy*,

2 Ala. 571 ; 2 Crabb on Real Property, § 1768 ; 1 Phil. Ev. 578 ; *ib.* Cowen & Hill's notes, part 2, p. 1487, note 1003.

VII. The sequestration act of the Confederate States was passed 30th August, 1861. It is penal in character, and must be construed strictly. But under no construction of it can it be held, that property acquired subsequent to its passage, by a citizen of the United States, was subject to sequestration. It declares "that all and every the lands, tenements," &c. "within these Confederate States, and every right and interest therein, held, owned, possessed or enjoyed by or for any alien enemy since the 21st day of May, 1861, except," &c.—See Acts Prov. Congress, 201. It is clearly not prospective. The will in this case was not executed until 1863, and the testator did not die until some time during the year 1864. The trust estate of complainant was not subject to sequestration, and there was no violation of the public policy in creating it. But had the creation of such a trust been contrary to the public policy of the Confederate States, still it would now be good, because the very question which was so gallantly contested was whether or not that public policy should prevail, and it was decided that it should not. The government of the Confederate States was a government *de facto*, not *de jure*. When the government was destroyed, its laws and policy not only *ceased to exist*, but *ceased to exist, as if they had never been*. The case to which our attention has been called, (*Blassom v. Van Amringe*, January term, 1867, S. C. North Carolina,) fully sustains the position taken for the appellant.

CHILTON & THORINGTON, for appellee.—1. The attempt here is to devise title to real estate, in the very teeth of the statutes.—Code, §§ 1320, 1551.

2. The usual answer in such cases is, " the statute was designed to prevent frauds, and to apply it, would be to encourage fraud." This rule has no application here, for it is not pretended that there was, or is any fraud in this case, on the part of Ed. Hanrick, the testator ; the transaction was precisely as the parties intended it, and leaves the case in all its length and breadth exposed to the pro-

visions of the statute. They *intended*, for the reasons stated in the bill, to create a *parol* trust, and the statute says, no such trust shall be valid or enforced. If parties can in this way evade the law, and open the door by parol proof to destroy rights guaranteed by the most solemn assurances, what becomes of the statute? Can we conceive of a case where it will apply? We think not. There will be no protection against fraud and perjury, against which such enactments are leveled.

3. Parol proof may be admitted, to show that one paper was fraudulently obtruded on the testator for another, as in the case of *Doe, ex dem. v. Allen*, 8 Dunf. & East. 147, or where the heir fraudulently induces the ancestor not to make a will or deed providing for his wife, &c., under the promise that he, the heir, will make the desired provision, as in *Shecklin v. Aldridge*, 9 Ves. 519. So if the younger son fraudulently induce the father to make a bequest to him, upon condition that he will pay the oldest son $10,000, as in the case of *Oldham v. Lichford*, 2 Vernon's Rep. 506; but in all these cases there was fraud in procuring the will; false inducements were held out to get the testator to make a will, which he would not otherwise have made. But it is clear these cases have nothing to do with the case at bar, for here was no fraud on the part of Hanrick; the testator makes his will as he intended it, and according to the bill, which for the sake of this argument, I concede to be true; the parties set about deliberately to create a parol trust, which cannot be done. The bill in this case amounts to but an attempt to engraft upon the will of Charles Barrell a trust which entirely defeats it, by parol. *There is no fraud in obtaining the will.* If the bill is maintained, it simply amounts to engrafting upon a will duly executed, according to the solemnities of the law, an alleged cotemporaneous agreement, that while the will gives the property *absolutely*, it shall be *in trust only* for complainant.

4. As to the real estate, the trust is not one which results by implication or construction of law, or which may be transferred or extinguished by operation of law, and all other trusts are required to be in writing by an express provision of the Code, § 1320, which section is set up by

the demurrer, as well as specially pleaded. There is no answer of the defendant admitting the trust to take the case out of the statute; on the contrary, the trust is denied. The authorities are clear to the point that such trusts come within the statute.—See opinion of Lord Chancellor Hardwick, in *Lloyd v. Spiller*, 2 Atk. Rep. 150; Lewin on Trusts and Trustees, 228 to 231; and see Mr. Sander's notes on this case, Sanders on Uses, &c., p. p. 259, 260. The rule which admits parol evidence, even to establish a resulting trust, is very stringent, and is viewed with great disapprobation, and Mr. Hill says, " in modern times has scarcely ever been received without eliciting some expressions of animadversion."—See Hill on Trustees, m. p. 125; also, *Trimmer v. Bane*, 7 Ves. 520. But the trust here, if any there be, or ever was, *was created by the contract of the parties*. It is not a resulting trust, or a trust by construction, but the parties undertake to create a trust in the very teeth of the statute. Such must be in writing.—Lewin on Trustees, 237, m. p. 230. The case presents one will *in writing*, duly proved and recorded, and which is not attempted to be set aside by the bill, but seeks to set up *a will by parol*, controling the written will, and making the written will confer no beneficial *interest*, whereas, on its face, it gives the entire estate. *We find no case going this far*.

5. But there is another point that we think is conclusive of this case in equity. Suppose the Confederate States had achieved their independence, and this cause was now pending with all the facts and circumstances connected with it, what would the chancellor be compelled to say? Plainly, he would declare; that the testator not only has attempted to evade the statute against parol trust upon the statute book, (see Code, page 285, § 1320,) but has attempted to defraud the government by substantially resting in an alien enemy his real estate in such manner as that it may not be found out, to-wit: by secret trust. Suppose the complainant to have filed his bill saying, " I was and am an alien. When this will was made I was an alien enemy, and any property I had in Alabama was subject-matter for confiscation. My brother made his will so as to avoid that law, in fraud of it, vesting the property in a

friend of mine absolutely, but with the *secret* understanding that he would turn it over to me, and thus enable me successfully to cheat your law of confiscation." What would the court have said to such a bill? The answer would clearly have been : "Who comes into this court, must come with clean hands." "*Ex turpi contractu actio non oritur;*" "*In pari delicto portio rest conditio defendentis,*" and why should not this wholesome reply be *now* given, since this is substantially the bill and the case made by it? Is the law of legal morality relaxed? Are the precincts of the courts less sacred? Are its maxims less pure? In God's name, if we have lost our liberty, let us preserve our morality. It is submitted in all confidence, that this case must be tried and decided by the law, *existing at the time, and controlling the rights of the parties when this will was made.* Such is the established law of nations, as recognized by all the courts of authority here and elsewhere.—See *Watson v. Stone*, 40 Ala. 451, *where the authorities are ably collated.*

JUDGE, J.—Charles Barrell, by his will, after expressing a desire that all his just debts should be paid, bequeathed to Edward Hanrick, in absolute right, "the rest and remainder" of his estate, "both real, personal, and mixed, of whatever kind." He subsequently, by a codicil to his will, gave to Miss Olivia Benson, and to Miss Louisa Benson, five hundred dollars each.

George Barrell, a resident of the State of New Jersey, and brother of the testator, filed the bill in the present case, for the purpose of having established a secret parol trust, created for his benefit in connection with the bequest to Hanrick. It is alleged in the bill, that the will was executed "during the pending of war between the United States and the late Confederate States; that under the laws of the late Confederate States, a citizen of the State of New Jersey was regarded as an alien enemy, and any property to which he might have acquired a title during said war, in any State of the late Confederate States, would, under the laws of the said Confederate States, have been subject to sequestration; that for the purpose

of securing his property to the said George Barrell, after the death of the testator, and placing it in such a condition as would prevent it from being sequestrated, it was agreed and understood between the testator and the said Edward Hanrick, that the will should be executed as aforesaid, and that said Hanrick should hold the property bequeathed to him, for the use and benefit of the said George Barrell; and should, at a proper time, convey the same to the said George Barrell, or otherwise dispose of the same for his use and benefit." It is further alleged, " that in accordance with said agreement, and relying upon the performance of said trust, the will was executed."

The evidence very satisfactorily establishes the agreement between the parties, as above set forth; and from their long acquaintance, and the strong friendship that existed between them, the character and business capacity of each, and the great confidence of the testator in Hanrick, and the peculiar control and influence of the latter over the former as to all business transactions, we think it a fair inference that the bequest to Hanrick, and the parol stipulation in relation thereto, had birth as the result of Hanrick's suggestions and advice.

This being established the next question which presents itself is this : Can the trust be established, and its performance be enforced, in view of section 1320 of the Code, which declares that, " No trust concerning lands, except such as results by implication, or construction of law, or which may be transferred or extinguished, by operation of law, can be created, unless by instrument in writing, signed by the party creating, or declaring the same, or his agent or attorney, lawfully authorized thereunto in writings." This section of our Code is a substantial re-enactment of a section of the English statute of 29 Ch. 2, commonly called the statute of frauds, which, it is believed, has also been adopted, in substance, by most of the States of the Union ; and under the operation of this statute, it has been well settled, in both England and America, that, *in avoidance of a fraud*, a parol trust may be engrafted upon an instrument, which purports to be absolute on its face, notwithstanding the prohibition of the statute—and this

upon the ground that the statute being intended to prevent fraud, its original design would be thwarted, if it could be used as a cover under which fraud could be successfully perpetrated. Such has long been the established doctrine of this court.—See *Kennedy v. Kennedy*, 2 Ala. 571, in which the principal authorities are collated, and the question is elaborately discussed, in a thorough and very able opinion by Collier, C. J. See also, Tiffany & Bullard on Trustees, t. pp. 189, 195; 1 Story's Equity Jurisprudence, sec. 184 and notes, on pages 186, 187. But conceding the proposition as above announced to be correct, still it is contended that to constitute fraud, and suspend the operation of the statute, there must be deceit, or misrepresentation, or evidence that the subsequent failure to fulfil the engagement, was the result of an original fraudulent design. It is admitted that there are high authorities which hold such to be the correct doctrine, on the ground that " those who choose to rely upon an oral assurance, in cases where the legislature has required a writing, must trust to the honor of those with whom they deal, and cannot look to the law for indemnity for the breach of an agreement which it has solemnly deprived of all legal value."—(2 L. C. in Eq. 708.) But the contrary doctrine is also well sustained by authority, and we are precluded from considering the question an open one, by the previous decisions of this court. In this State, while it is well settled that the fraud which avoids a specialty *at law*, must relate to the *execution of the instrument*, it is equally as well settled that the jurisdiction of *chancery* is much more extensive; and that "fraud, as denounced in equity, includes all acts, omissions, or concealments which involve a breach of a legal or equitable duty, trust, or confidence, justly reposed, which are injurious to another, or by which an undue, or unconscientious advantage is taken of another." *(Kennedy v. Kennedy, supra.)* Hence, Dargan, J., in *Bishop's Heirs v. Bishop's Adm'r*, 13 Ala. 483, says : "The ground upon which courts of equity undertake to establish trusts of this character, is that of preventing the fraudulent use of a deed ; for although there is no fraud in the execution of the deed, if it be afterwards converted to a

fraudulent purpose, or to one wholly different from the one intended by both parties at the time of its execution, equity ought to interpose, and prevent such an improper use of it, and establish the trusts for which it was executed.—See 6 Paige's R. 147 ; 1 Dallas Rep. 424."

There is no reason to believe that Hanrick practiced any fraud or deceit in procuring the bequest to him in the will of Charles Barrell; on the contrary, there is every reason to believe, that at the time of the execution of the will, Hanrick intended, honestly and fairly, to execute the trust in question ; and, doubtless, his death alone prevented it. But having died without complying with his agreement, equity and good conscience forbid that the property should go to Hanrick's heirs ; and the failure of Hanrick to execute the trust, from whatever cause, is a constructive fraud, against which relief should be decreed.—*Lessee of Thompson, et ux, v. White,* 1 Dallas, 424; see also, *Kennedy v. Kennedy, supra ;* Tiffany & Bullard on Trustees, t. pp. 189, 195 ; 1 Story's Eq. Jur., sec. 184, and notes on pp. 186, 187.

It is contended, however, that the bill cannot be entertained, as it sets out on its face that the agreement from which springs the trust, was made with a view to evade the confiscation acts of the government of the Confederate States ; and that therefore the appellant does not come into equity with clean hands.

This precise question was made in *Blassom v. Van Amringe,* and decided by the supreme court of North Carolina, at the January term, 1867.—(1 Phil. Cases in Equity, 133.) The court held that the objection would have been fatal, if taken before a court of the *de facto* State government, which formed a part of the Confederate States ; but that the supreme court of North Carolina was a co-ordinate branch of a rightful State government forming a part of the United States, and could not entertain such an objection. We concur in this conclusion, which is decisive of the same point in the present case, and is not in conflict with the previous decisions of this court, relative to the enforcement of executory contracts based on the treas-

ury notes of the late Confederate States, *after they had become the currency of the country.* We deem it unnecessary to elaborate this proposition, as the reasons for the distinction indicated will readily present themselves.

The cross assignments of error, makes, under a rule of this court, two causes between the same parties. In the case of George Barrell, appellant, the decree of the chancellor dismissing the bill, so far as it seeks to establish the trust as to the realty, must be reversed. In the case of Edward Hanrick, administrator, *et al.*, appellants, so much of the decree as declares and establishes the trust as to the personalty, must be affirmed; and George Barrell must recover his costs in this count, as appellant in the one case, and as appellee in the other. The court below will render a decree declaring and establishing the trust, as to both the realty and personalty remaining after the payment of the debts of the estate, and the specific legacies; and the principal cause must be remanded for further proceedings in conformity with this opinion.

BYRD, J., concurs in the result, but not in the distinction drawn in the last branch of the case as to the point settled and the executory contracts based on Confederate treasury notes, as it is not conceived necessary to the decision of the case.