# Patton *v.* Beecher *et al.*

## *Bill in Equity to Declare and Enforce Trust.*

1. *Parol trust; what evidence necessary to prove.*—Parol trusts, in opposition to the terms of a written instrument, can be enforced only on clear and precise allegation, supported by plain and convincing proof; and a closer correspondence between the pleadings and proof is required in such case than in ordinary causes, for the reason that they are raised and enforced in opposition to the terms of a written instrument.

2. *Code,* § 2199 *of, construed.*—Under our present statute (Code, § 2199,) and since the Code of 1852, a trust in lands, not arising by implication or construction of law, can not be established by parol; but must be created by instrument of writing.

3. *Same.*—An express trust, that a grantee of lands, conveyed by deed absolute, expressing on its face a pecuniary consideration, shall hold for the use of the grantor and reconvey to her on request, can not be created by parol; and in the absence of clear evidence of fraud, imposition or mistake, *at the time* of the execution of the conveyance, the grantee's repudiation of the verbal promise to hold for the use of the grantor, and to reconvey, is not a fraud against which a court of equity can relieve.

4. *Cases commented on and criticised.*—The cases of *Kennedy v. Kennedy,* (2 Ala. 571,) and *Bishop v. Bishop,* (13 Ala. 475,) were decided prior to the present statute against the creation of parol trusts in lands; and the latter involved such a trust in personal property, which is not within the prohibition of our own or the English statute of frauds. The case of *Barrell v. Hanrick,* (42 Ala.

[Patton v. Beecher et al.]

60,) originated since the enactment of our present statute ; but the court, without deciding how far it would feel bound to follow it, in a case similar in its facts, declares that "it can not be regarded as establishing the proposition, so broadly asserted, that the mere violation or repudiation of a parol promise or trust, offensive to the statute, is a fraud which will authorize a court of equity to relieve against the words of the statute."

5　*Secret trust; what requisite to establishment of.*—When a party seeks to establish and enforce a secret trust on the face of an absolute deed, it must be shown that the purpose was an honest one; and where an intention to screen property from the vigilance of creditors of the husband is averred by the wife, and the rules of law arising from such conduct are sought to be avoided, on the ground that the property was not subject to the demands of such creditors, it is incumbent on the wife to show clearly the absence of such liability.

APPEAL from Montgomery Chancery Court.

Heard before Hon. H. AUSTILL.

The bill in the present case was filed by the appellant, Mrs. Elizabeth Patton, wife of J. O. Patton, against Edwin Beecher and 'W. L. Chambers. It alleged that she was, prior to the 30th of October, 1869, seized in fee of a certain lot in the city of Montgomery, which was her statutory estate. On the 3d day of July, 1871, at the instance of her husband, who had failed in business and become apprehensive that the property might be subjected to payment of his debts, she and her husband executed a deed of bargain and sale of the premises to Edwin Beecher, which recites 'a consideration of four thousand dollars paid to her. She avers that no consideration was in fact paid her, " and that said deed was delivered to said Beecher and received by him simply to hold said property for oratrix, and as in no manner passing any interest or title in said property to the said Beecher;" that Beecher was an intimate friend and member of the family, and oratrix placed the utmost confidence in his verbal undertaking then made to her, to hold the property in trust for her, and not record the deed, but reconvey to oratrix whenever requested ; and for these reasons she took no written defeasance.

Beecher afterwards failed in business, without having reconveyed, and made an assignment to his co-defendant Chambers, on the 28th day of April, 1876. The bill prays that the deed to Beecher be declared void and canceled, or that Chambers be required to reconvey, and for general relief.

The other facts are fully stated in the opinion.

This appeal is taken from a decree of the Chancellor dismissing the bill.

W. A. GUNTER and D. T. BLAKEY, for appellant.—The undoubted facts of this case show that Mrs. Patton, a married woman, for $2,000 cash and for an equal amount upon credit, received 'a conveyance of the lot in question from Miss Dun-

can. This was enough to invest her with a separate statutory estate in the property. As the conveyance to her is not impeached by any creditor of her husband, it is useless to trace her title further back, and it is idle to talk about the probability or fact, if it be established, that the cash consideration of the conveyance was furnished by Mr. Patton, and that the deed was fraudulent as to *his* creditors. Neither does it make any difference if Beecher paid the credit portion and gave it to Mrs. Patton for a consideration furnished by Mr. Patton. Patton's creditors do not complain, and no one else can.—*Terry v. Keaton,* 58 Ala. 667; *Paulk v. Wolfe, Gillespie & Co.* 34 Ala. 543–4.

The title and property being in Mrs. Patton, she was under absolute disability to convey, except upon a sale.—*Garrett v. Lehman, Durr & Co.,* 61 Ala. 391; 59 Ala. 436–40.

The subsequent conveyance, then, to Beecher, upon the expressed consideration of $4,000, when nothing was paid or agreed to be paid, would, if consistency is regarded in judicial decisions, be utterly void.—*ib.*

And as Mrs. Patton is in possession, and as parol evidence is necessary to establish the invalidity of the deed, it would constitute a cloud on the title, removable in chancery.—*Hurt v. Lockett,* 57 Ala. 198; *Rea v. Longstreet et al.,* 54 Ala. 670.

The agreement, then, by Beecher, to hold the title in trust for Mrs. Patton, is precisely the trust which the law would have *implied* against him.

An express agreement to perform a *legal duty,* co-extensive with the implication of law, growing out of the facts, is good always and may be declared on.—Smith on Contracts, 115 *et seq.*

The trust, therefore, sought to be enforced in this case, is not against the spirit or words of § 2199 of the Code, but is expressly excepted from its operation.

It is idle to say that a married woman can not impeach the consideration of a deed made by her, as it is done every day and is sustained by the courts.—*Conner v. Williams,* 57 Ala. 131; *ib.* 122.

There never is an estoppel, between the original parties to a transaction, or their assignees, not standing as *bona fide* purchasers, to disclose facts showing a want of *capacity* to do an act.

But, if the recital of the consideration is binding on the complainant, it is equally so on Beecher, the grantee, and upon his assignee Chambers, who can not claim as a purchaser.—*Twelves v. Williams,* 3 Wharton, 485; 2 Lead. Cases in Eq. 104–5–6.

And, as it is clearly shown that no part of the alleged con-

[Patton v. Beecher et al.]

sideration of $4,000, has ever been paid, the complainant, under the general prayer for relief, is entitled to have her vendor's lien enforced. The case of *Leman v. Whitley,* 4 Russ. 423, is directly in point.

In that case the court refused to enforce the parol trust, but enforced the vendor's lien. In that case there was no want of capacity in either of the parties to convey. The deeds were therefore operative, and, therefore, no implication of trust on the part of the grantee to hold for the grantor. Here the grantor, having no capacity to make a binding conveyance, except upon a sale, the grantee must, if the transaction is not a sale, stand as a trustee *in invitum.* The implication of trust in this case distinguishes it from the case in 4 Russ, *supra,* and if not, then, that case is an authority for enforcing the vendor's lien.

No matter what the motives of Patton or Beecher may have been, in inducing the conveyance to Beecher, they can not be imputed, even if proved, to Mrs. Patton. She is a married woman, deemed to be absolutely *sub poter tale visi,* and incapable of participating in any fraud resulting from *design* respecting her separate *statutory* estate.—57 Ala. 321; 59 *ib.* 436–7; *Trust Co. v. Sedgwick,* 7 Otto, 308; 5 *ib.* 3.

She may sell in the form prescribed by law, because the statute *enables* her to do so. In other respects she remains under the disability, and, consequently, the protection of the common law.—57 Ala. 321; *ib.* 122; 59 *ib.* 436–40; 7 Otto, 308; 5 *ib.* 3; 61 Ala. 394.

The simple facts of the case, then, show that a married woman, seized of a statutory estate, is *induced* by her husband and Beecher to convey it *without any consideration,* and the Chancellor, in spite of the law, which says she can sell, but is under disability in other respects, and in spite of the decision of *Barrell v. Hanrick,* 42 Ala. 60, on the construction of § 2199 of the Code, holds that the conveyance is operative, and that the married woman may thus be defrauded of her property and the policy of the law defied.

CLOPTON, HERBERT & CHAMBERS, *contra.*—Seeking relief, as the appellant does, against the creditors of Beecher, she must be held to the strictest rules of pleading and proof. She has placed herself under peculiar obligations to be distinct and explicit in her averments, by stating the motive with which she made the conveyance, and she should, by averment and proof, negative the presumption that the money she invested could have been subjected to the payment of her husband's debts.—6 Ala. 718; 30 Ala. 352. It will not do to contend that a wife may not be guilty of fraud, or be

[Patton v. Beecher et al.]

estopped by it.—See *Drake & Wife v. Glover*, 30 Ala. 256. Mrs. Patton was then a person who, under the laws of Alabama, was "*capax doli.*" She conveyed the property in such a manner as to convey title, and if she was making a pretended sale to avoid the supposed danger of the land being subjected to her husband's debts, it is an executed contract, which, as between the parties thereto, a court will not disturb.—8 Por. 351; 1 Ala. 34; 24 Ala. 513; 27 Ala. 336.

No trusts concerning lands, and not in writing, "whether implied by law, or created or declared by the act of the parties, can defeat the title of creditors or purchasers for a valuable consideration without notice.—Rev. Code, § 1591.

Chambers, in this case, represents the creditors; his title is their title. "All the legal interest vests, nominally, in the assignee, but substantially in the *cestuis que trusts*, or creditors. . . The assignee has not even a beneficial interest in the estate. He is seized for others; not for himself."—Bump. on Fraud. Con. 352. Before the Code of 1852, statutes similar to this had been passed, the word "creditors," merely, being used, and not "title of creditors." By looking at the cases referred to in *Fash v. Ravesies*, 32 Ala. 251, it will be seen that the courts had settled upon *who* were the creditors meant, by confining it to creditors who had at law obtained a lien. This was simply because it would not do, as will be seen from the reasoning in the earlier cases, to prevent all sales of property by persons indebted; and so the line was drawn to include only creditors who had by law obtained a lien. This being the well settled law, the act of 1852 was passed. The different phraseology used means something, and it means to declare, by enactment, the rule laid down by Chief Justice MARSHALL in *Bayley v. Greenleaf*, 9 Wheat. 46.

The trust sought to be established in this case, is clearly within the letter and the spirit of the statute; it is not in writing, and to grant the relief prayed for is to repeal the statute, or strip it of all efficacy, by establishing a trust resting solely in parol, in the teeth of a deed, absolute in its terms, conveying the property for a sufficient consideration.—102 Mass. 24; 1 Watts, 163; Browne on Frauds, 94.

BRICKELL, C. J.—The bill is filed by the appellant, a married woman, to establish and enforce the execution of a parol trust, in opposition to the terms and legal effect of an absolute deed of lands, expressing an adequate consideration, executed by her and her husband in the mode prescribed by the statute to pass her contingent right of dower in the lands of her husband, or to pass her separate estate, whether it is

statutory or equitable. The facts averred in the bill are, that she was seized in fee of the premises, having purchased them with moneys held by her as her statutory estate. On the 3d day of July, 1871, at the suggestion, and on the persuasion of her husband, who had become insolvent, and who was apprehensive his creditors would attempt to subject the premises to the payment of his debts, she executed the conveyance in question to Edwin Beecher, (an inmate of her household, who for several years had been received and treated as a member of her family, and was a trusted, confidential friend,) without consideration, and upon his promise that the conveyance should not be recorded, and that he would hold for her use, and, on request, would reconvey to her, or surrender the conveyance to be canceled. The evidence in support of these averments proceeds from Beecher, the appellant, and her husband. Beecher states there was no consideration for the conveyance, and while *he can not explain,* (whether from a want of memory, or an unwillingness to do so, he does not say,) why the conveyance was made to him, he states there was no consideration for it, and *the intention* was the lot should be held for the benefit of appellant. The appellant and her husband state there was no consideration for the conveyance, and that its execution was at the instance and on the persuasion of Beecher, who expressed fears that the creditors of the husband would endeavor to sell the premises, and that to save herself and her family a home, she had better make the conveyance, he would not have it recorded, and at any time would cancel it, or reconvey to her. There is a variance between this evidence and the averments of the bill. Whatever of influence, or persuasion was exerted, and whatever of representation was made, to induce the appellant to execute the conveyance, the bill attributes solely to the husband, while the evidence imputes it to Beecher. This, and other variances between the pleading and the proof, would embarrass the claim of the appellant to relief, if it could be supported as a parol trust, either express, or resulting by implication of law. When such trusts are supported and enforced, it is only on clear and precise allegations, corroborated by plain and convincing evidence. A closer correspondence between the pleadings and proofs is required than in any other, except the analogous cases of bills for the reformation, or for the specific performance of contracts. The reason is obvious, they are raised and enforced in opposition to the terms of written instruments, which must be presumed to speak the truth, expressing fully and correctly the intention of the parties, until the presumption is removed by precise pleading of

facts, supported by evidence that leaves on the mind no just doubt.—1 Story's Eq. § 152.

The material question is, however, whether an express trust, that the bargainee or grantee of lands conveyed by deed, expressing a pecuniary consideration, shall hold for the use, and on request of the bargainor reconvey to him, can be created and proved by parol. For there is no evidence that this trust rested in writing; on the contrary, it is averred in the bill, that because of the intimate relations between the parties, and the great confidence reposed in Beecher, no writing disclosing the character of the transaction was taken. At common law, a use or trust, could be raised upon a conveyance of lands, by deed, or by writing, without seal, or even orally, if the rule of evidence prohibiting the change or contradiction of a writing by parol was not infringed.—Perry on Trusts, § 75; Hill on Trustees, 55; 2 Story's Eq. § 971. Contracts, if a statute does not intervene, may be partly expressed in writing, and partly in parol. If the writing does not set out the entire contract, parol evidence of the part omitted may be received, and it is not necessary that the writing should expressly and directly rebut the presumption that it contains the entire contract.— *Brown v. Isbell*, 11 Ala. 1009. Or a parol agreement, cotemporaneous with a written contract, though it may depend upon the latter and relate to the same subject matter, if separable from it, may be proved and enforced.—*Garrow v. Carpenter*, 1 Port. 359; *Mills v. Geron*, 22 Ala. 669; 2 Whart. Ev. § 1015. A trust, resting in parol, was not considered as affected by this rule of evidence, because it did not alter the legal operation of the conveyance, which had full effect in passing at law the absolute title. The trust did not alter, add to, or explain the deed, but was an incident, or a separable part of the contract, not reduced or intended to be reduced to writing, which a court of equity enforced as binding on the conscience of the party.—*Shelton v. Shelton*, 5 Jones Eq. 292; *Lee v. Browder*, 51 Ala. 288. When, however, a statute intervenes and declares that contracts must be made in a particular mode, or must be created or proved by writing, the common law rules of evidence are superseded, and the statute must be obeyed.—Perry on Trusts, §§ 78–86.

The seventh and eighth sections of the English Statute of Frauds, (29 Charles, 2, 23,) avoided all *declarations or creations of trusts or confidences* of any lands, tenements, or hereditaments, unless the same were manifested and proved by some writing, signed by the party who was by law enabled to declare such trust, or by his last will in writing; with a saving in favor of trusts or confidences, arising or resulting

[Patton v. Beecher et al.]

by implication or construction of law. The first, second and third sections of this statute, relating to the creation and transfers of estates or interests in lands, were not in terms adopted in this State; but a statutory provision, having in view the same object, expressed in these words : "No action shall be brought upon any contract for the sale of lands, tenements, or hereditaments, or the making any lease thereof, for a longer term than one year, unless the promise or agreement, upon which such action shall be brought, or some note or memorandum thereof shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized," was adopted in 1803, and continued of force until the adoption of the Code of 1852.—Clay's Dig. 254, § 1. Until that Code was adopted, there was no statutory provision in reference to the mode of creating, or declaring, or proving, uses, or trusts, or confidences of lands. The creation, declaration or proof of these stood as a common law, of which the English Statute of Frauds, having been enacted in 1677, was not a part. The principle being, that only such English statutes as were enacted before the emigration of our ancestors, which are applicable to our situation, and not inconsistent with our institutions, constitute a part of our common law.—*Carter v. Balfour*, 19 Ala. 814; *Horton v. Sledge*, 29 Ala. 478. The statute in reference to contracts of sale, or lease, did not exclude the creation or declaration of uses or trusts by parol, and consequently proof of them by unwritten evidence. It was confined in operation to the contracts specified, and had no influence on uses or trusts embraced by the seventh and eighth sections of the English statute.—*Bank of U. States v. Carrington*, 7 Leigh, 566; *Fleming v. Donnahve*, 5 Ohio, 255; *Ready v. Keanley*, 14 Mich 215; *Osteman v. Baldwin*, 6 Wallace, 116; *Hargraves v. King*, 5 Ired. Eq. 430; *Clowinger v. Summit*, 2 Jones Eq. 513; *Shelton v. Shelton*, 5 Jones Eq. 292; *Wilburn v. Spofford*, 4 Sneed, 705; *Haywood v. Ensley*, 8 Humph. 260; *Perry on Trusts*, § 75.

The seventh and eighth sections of the English statute, were as follows : "All declarations or creations of trusts or confidences, of any lands, tenements, or hereditaments, shall be manifested and proved by some writing, signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect. Provided always, that where any conveyance shall be made of any lands or tenements, by which a trust or confidence shall or may arise or result by the implication or construction of law, or be transferred or extinguished by an act or operation of law, then, and in every such case, such

trust or confidence shall be of the like force and effect as the same would have been, if this statute had not been made; any thing heretofore contained to the contrary notwithstanding."—Browne on Statute of Frauds, 78. The Code of 1852, § 1320, (Code of 1876, § 2199,) declares: "No trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating, or declaring the same, or his agent, or attorney, lawfully authorized thereto in writing." Between this and the English statute, there are differences of phraseology, not affecting any question now presented, and whether these differences will require a difference of construction, it is not now necessary to discuss. The statutes have a common purpose—the requisition of written evidence of trusts concerning lands, and the prohibition of the enforcement of such trusts resting merely in parol; unless they fall within the exception of *trusts resulting by implication or construction of law, or which may be transferred or extinguished by operation of law.*

The kinds of trusts which these statutes embrace—which the English statute requires shall be *manifested and proved* by writing, and which our statute requires shall be *created* by writing—is made apparent by the exception. All other trusts than such as *arise or result by implication or construction of law*, are within its operation. Trusts arising or resulting by implication of law may be excluded by, but they do not arise from, nor are they dependent upon the agreement of the parties. From facts proved, without any declaration or agreement of the parties, the law raises the trust. A common case, is when A. purchases lands with the money of B., taking the conveyance of title to himself, the law implies a trust of the title for B. Or, where an agent employs the money of his principal, or a trustee the funds of the *cestui que trust*, in purchasing lands, taking a conveyance to himself, by construction of law a trust of the legal estate results to the principal, or to the *cestui que trust*. Whenever the trust is dependent upon the agreement or declaration of the parties—when it does not arise from facts proved, attending the creation of the legal estate, it can not rest in parol—the statute is positive, it must be created by writing, signed by the party declaring or creating the same.—Perry on Trusts, §§ 79–81; 2 Lead. Eq. Cases, 974–5; *Flint v. Sheldon*, 13 Mass. 448; *Graves v. Graves*, 29 N. H. 129; *Smith v. Hallenback*, 51 Ill. 223, *Lantry v. Lantry*, *ib.* 458; *Philibrook v. Delano*, 29 Me. 410; *Gerry v. Stinson*, 60 *ib.* 186; *Barrett v. Dougherty*, 32 Penn. St. 371; *Miller v. Cotton*, 5 Ga. 341.

The counsel for the appellant insist, that as the convey-
ance to Beecher is shown to have been without considera-
tion, good or valuable, the law implies, or rather there is a
resulting trust to the grantor, not affected by the express
parol agreement for such trust.   It was the doctrine of the
ancient common law, that on all conveyances to a stranger,
*not declaring uses*, made without consideration, the use which
was no more than the trust of the present day, resulted to
the grantor, if he was seized of the fee.—Coke Litt. 23a, 271a;
1 Com. Dig. 420.   However this may have been as to com-
mon law conveyances, a deed of bargain and sale, or a cove-
nant to stand seized, before and since the statute of uses,
are regarded as declarations of uses.—1 Sanders on Uses &
Trusts, 152–7.   The statute of uses simply converts them
from declarations, which a court of equity would establish
and execute, into conveyances of the legal estate.   Without
transmutation of possession—without livery of seizin, by
force of the statute, they operate as conclusive and effectual
conveyances, as the feoffment or grant of the common law.
*Horton v. Sledge*, 29 Ala. 478.   There has never been in use
in this State, any of the common law conveyances, which
operated without consideration, and to the operation of
which livery of seizin was essential.   All our conveyances
are in form bargains and sales, or covenants to stand seized,
deriving their operation from the English statute of uses, a
part of our common law, or from our own statute, the same
in substance.—*Horton v. Sledge, supra.*   These conveyances
are founded on a consideration expressed on the face—a
bargain and sale on a *valuable consideration*—a covenant to
stand seized on a *good consideration.*   The statute intervenes,
and by its own force converts the use into a legal estate in
the bargainee or covenantee.   Parol evidence disproving the
consideration expressed, changing the character of the con-
veyance, is inadmissible without violating the principle, that
parol evidence can not control, alter, vary or contradict a
writing, as between the parties, no part of a conveyance is
more essential, or more solemn, than the expression of the
consideration, which determines its character, either as a
bargain and sale, or as a covenant to stand seized.   The
grantor is bound by it, as he is by any other recital or ad-
mission the deed may contain.   The consideration may, as
in the present conveyance, be pecuniary, and it may be per-
missible for either party to show a greater or less considera-
tion of the same kind, than that expressed.—*Sanders v. Hen-
drix*, 5 Ala. 224.   But in the absence of fraud or mistake, it
is not permissible for them, by parol, to show a want of con-
sideration, or a consideration of another kind.—*Murphy v.*

VOL. LXII.

[Patton v. Beecher et al.]

*Br. Bank*, 16 Ala. 90; *Graves v. Graves*, 9 Foster (N. H.) 129; Perry on Trusts, § 162; Hill on Trustees, 61; 1 Leading Eq. Cases, 282.

The want of consideration would simply render the conveyance voluntary, inoperative against the existing creditors of the grantor, but as between the parties it would be valid, operative to pass the legal estate, excluding the implication of a use or trust for the grantor.—*Leman v. Whitely*, 4 Russell, 423; *Soursbye v. Arden*, 1 Johns. Ch. 240; *Wilkinson v. Wilkinson*, 2 Dev. Eq. 376; *Green v. Thomas*, 11 Me. 38; *Philibrook v. Delano*, 29 ib. 410; *Graves v. Graves*, 9 Foster (N. H.) 129; *Titcomb v. Morrill*, 10 Allen, 15; *Squire v. Hursler*, 1 Paige, 494. It is of itself a declaration of uses, and if not otherwise expressly limited, the statute would intervene, and it would pass a fee simple.—Code of 1876, § 2178.

It is also insisted, that if the trust is not an implied or resulting trust, but a direct, express trust, it is of the character a court of equity, for the prevention of fraud, is accustomed to withdraw from the operation of the statute of frauds "In the construction of that statute," it is said by Judge Story, " a general principle has been adopted, that as it is designed as a protection against fraud, it shall never be allowed to be set up as a protection and support of fraud. Hence, in a variety of cases, when from fraud, imposition, or from mistake, a contract of this sort has not been reduced to writing, but has been suffered to rest in confidence or in parol communications between the parties, courts of equity will enforce it against the party guilty of a breach of confidence, who attempts to shelter himself under the statute." 1 Story's Eq. § 330. That fraud, imposition, or mistake, will in a court of equity, take a case without the statute, all the authorities agree; but in the application of the principle, as on many of the questions which arise on the construction and operation of the statute, there is great diversity of opinion.

There are authorities, (now invoked by the appellant,) which hold, that though no fraud or imposition is intended or practised, if a deed is executed, or a will made, or any contract required to be in writing is entered into, if it is attended by a parol agreement, that it shall operate only for particular uses and purposes, though the parol agreement is intentionally omitted from it, and its performance left entirely to the conscience of the party promising, a subsequent violation or repudiation of the agreement, is a fraud against which a court of equity will relieve, by withdrawing the case from the *grasp of the statute*. Other authorities, more numerous, hold that the fraud which will withdraw a case from the

[Patton v. Beecher et al.]

operation of the statute is not simply that fraud which may be imputed to every deliberate breach of a contract or promise. " The true rule," says Mr. Browne, " seems to be that there must have been an original misrepresentation by means of which the legal title was obtained; an original intention to circumvent, and get a better bargain, by the confidence reposed."—Browne Stat. Frauds, § 94; 2 Leading Eq. Cases, 963; *Hoge v. Hoge*, 1 Watts, 163; *Kisler v. Kisler*, 2 Watts, 225; *Jackman v. Ringland*, 4 W. & T. 149; *Johnston v. La Motte*, 1 Rich. Eq. 347; *McDonald v. May*, 6 *ib.* 91; *Miller v. Cotton*, 5 Geo. 341; *Glass v. Hulbert*, 102 Mass. 24.

It is insisted this court has recognized and adopted the rule first stated, and that though no fraud, no imposition, no violation of confidence was practiced or intended at the execution of the deed, its conversion to other uses than such as were expressed by the parol agreement, is a fraud against which courts of equity will relieve. If the rule has been established, it is a rule of property from which we are not at liberty to depart, and its reason or policy would not be open to discussion. The cases supposed to have established the rule are, *Kennedy v. Kennedy*, 2 Ala. 571; *Bishop v. Bishop*, 13 Ala. 475; *Barrell v. Hanrick*, 42 Ala. 60. After a careful examination of the cases, whatever may be the expressions found in them, we do not think they can be regarded as an adoption of the rule, or that it was necessary to sustain the results reached in either, unless it was the latter case. All of them, (except the latter,) originated and were decided before the enactment of the present statute against the creation of parol trusts, while the common law of force, which recognized and enforced such trusts, if the rule forbidding the introduction of parol evidence to vary written instruments was not offended.

In *Kennedy v. Kennedy, supra*, the grantor and grantee were brothers, who for many years had lived in the most intimate relations, conducted business, if not strictly partners, yet jointly, and in the grantee, the grantor had reposed most unlimited confidence, relying greatly on his advice and judgment. Having fallen into intemperate habits, unfitting him for the intelligent transaction of business, the grantor was induced by the grantee and other relatives, who wished to strip him of the power of making injudicious dispositions of his real estate, to make the absolute conveyance in question. The purpose of the conveyance was, that the grantee should hold in trust for the use and benefit of the children of the grantor, who were infants, and it was attended with the promise that he would so hold. The conveyance proceeded from the suggestion of the grantee—from the confidence re-

posed in him, which he accepted, and upon which he induced the grantor to rely. The trust would have been valid at common law. Under the statute of frauds, the case belongs to that large class to be found in the books, in which a court of equity interferes to relieve against the fraudulent prevention of acts to be done for the benefit of third persons.—1 Story Eq. §§ 251, 781; Perry on Trusts, §§ 181–2; 2 Lead. Eq. Cases, 978. It is not the verbal promise, but the fraud of the donee, or devisee, which invites the interference of a court of equity. "It belongs to a class in which the trust arises *ex maleficio*, and in which equity turns the fraudulent procurer of a legal title into a trustee, to get at him."—*Hoge v. Hoge*, 1 Watts, 214; *Glass v. Halbert*, 102 Mass. 39; *Miller v. Pearce*, 6 W. & T. 99. The case of *Barrell v. Hanrick, supra*, if it can be supported, must rest upon this ground.

In *Bishop v. Bishop, supra*, the trust was of personal property. In the absence of a statute, personal property may be sold and transferred, or trusts thereof created or extinguished by parol. Such trusts are not within the prohibition of our own, or of the English statute of frauds.—Perry on Trusts, §§ 84–86.

The case of *Barrell v. Hanrick, supra*, is the only case of a parol trust dependent wholly on the agreement of the parties, not arising by implication of law, originating since the enactment of the present statute. The learned judge delivering the opinion, adopts to its fullest extent, the proposition, that though there is no fraud, imposition, or mistake at the execution of the instrument, the subsequent violation of a parol promise inducing its execution is a fraud, which authorizes a court of equity to establish and enforce the promise in opposition to the statute. And it is said: "We are precluded from considering the question an open one, by the former decisions of this court." The decisions supposed to preclude us, are the cases of *Kennedy v. Kennedy, supra; Bishop v. Bishop, supra*, neither of which, as we have seen, involved the question; each originating and decided before the enactment of the statute, and the latter a trust of personal property, not within the statute, capable of creation, or of extinguishment by parol. It is not necessary now to say how far we would feel bound to follow *Barrell v. Hanrick*, in a case similar in its facts, or one in which a devisee, or donee, was active in intercepting the bounty intended for another, or in preventing the parol trust from being reduced to writing. We cannot regard it as establishing the proposition, so broadly asserted, that the mere repudiation or violation of a parol promise, or trust, offensive to the statute, is a

[Patton v. Beecher et al.]

fraud which will authorize a court of equity to relieve against the words of the statute.

The exception of cases from the operation of the statute of frauds, eminent judges have regretted, and have declared they would not carry them further than well defined decisions compelled. In *Lindsey v. Linch*, 2 Sch. & Lef. 4, Lord Redesdale, said : "The statute was made for the purpose of preventing perjuries and frauds, and nothing can be more manifest to any person who has been in the habit of practicing in courts of equity, than that the relaxation of that statute has been a ground of much perjury and fraud. If the statute had been rigorously observed, the result would probably have been that few instances of parol agreements would have occurred. Agreements would, from the necessity of the case, have been reduced to writing. Whereas, it is manifest, that the decisions on this subject have opened a new door to fraud." The observations of Judge Story, are instructive and admonitory to a court called to fix the construction and operation of a statute recently enacted, for the prevention of frauds and perjuries, clear and unambiguous in its terms, prohibiting the creation of parol trusts, dependent for their existence wholly on the agreement of the parties. Of the exceptions, judicial decision has introduced, trenching upon the policy and objects of the statute, he says, "it is far from being certain, that they do not assist parties in fraudulent contrivances, and increase the temptations to perjury, quite as often as they do assist them in the promotion of good faith, and the furtherance of justice.—1 Story's Eq. § 765.

The plain meaning of the statute, is, that a trust in lands, not arising by implication or construction of law, cannot be created by parol—that a writing signed by the party creating or declaring the trust, is indispensable to its existence. Fraud, imposition, mistake, in the original transaction, may constitute the purchaser, or donee, a trustee *ex maleficio*. It is *fraud then,* and not *subsequent fraud,* if any exist, which justifies a court of equity in intervening for the relief of the party injured by it—as it is the payment of the purchase money at the time the title is acquired, which creates a resulting trust, and not a subsequent payment, whatever may be the circumstances attending it.—*Barnett v. Dougherty*, 32 Penn. 371. When the original transaction is free from the taint of fraud or imposition ; when the written contract expresses all the parties intended it should ; when the parol agreement which is sought to be enforced, is intentionally excluded from it ; it is difficult to conceive of any ground upon which the imputation of fraud can rest, because of its subsequent violation or repudiation, that would not form a

[Patton v. Beecher et al.]

basis for a similar imputation, whenever any promise or contract is broken.— *Wilson v. Watts*, 9 Md. 356–436. It is an annihilation of the statute, to withdraw a case from its operation, because of such violation or repudiation of an agreement or trust, it declares shall not be made or proved by parol. There can be no fraud, if the trust does not exist, and proof of its existence by parol, is that which the statute forbids. In any and every case, in which the court is called to enforce a trust, there must be a repudiation of it, or an inability from accident to perform it. If the repudiation is a fraud, which justifies interference in opposition to the words and spirit of the statute, the sphere of operation of the statute is practically limited to breaches from accident, and no reason can be assigned for the limitation. We are not inclined to establish a precedent in the early days of the construction of the statute, of which it can be justly said, that it trenches upon its policy and objects, creating an exception to its words, and opening a door for all the mischief it was intended to suppress. A mere parol promise by the grantee that he will hold for the use, and reconvey to the grantor on request, is a trust which must be created or declared by writing. If not so created or declared, in the absence of some clear evidence of fraud, imposition, or mistake, at the time of the execution of the conveyance, his repudiation of it is not a fraud, against which a court of equity can relieve.—2 Lead. Cases Eq. 974–8.

It is difficult to conceive of any good motive a grantor can have in the execution of an absolute conveyance, intending that the grantee shall be the mere repository of a naked legal title, while he reserves the exclusive beneficial interest. Such a reservation ,or trust, if written on the face of the conveyance, or declared by writing executed at the same time, would nullify the conveyance, depriving it of all operation, and the legal estate would remain in the grantor.—Code of 1876, § 2185. If the trust was declared, and some active duties were required of the trustee, there would not rest on the transaction any just suspicion. But when, as in the present case, no such duties are required, when he is simply clothed with the naked legal title, and the entire control and exclusive enjoyment is reserved by the grantor, it is difficult to resist the strong expression employed elsewhere, that he is "guilty of a gross folly, or actuated by a sinister design." If moved by the latter, he cannot ask a court of justice to relieve him from the toils of his own invention; if the former, he must show that he has been over-reached; that his folly has been practised upon by the more wary, or he cannot ask reasonably that rules of law shall be suspended for his benefit.

(38)

[Patton v. Beecher et al.]

Without departing from the statute, in equity, an absolute conveyance, taken merely as a security for a debt, may, on parol evidence, be converted into a mortgage. The court does not profess to give effect to a parol agreement for a reconveyance, or a parol trust that the grantee should hold for the use of the grantor. The relation of debtor and creditor affords the latter so many opportunities of taking advantage of the necessities of the former, that transactions between them are narrowly watched. A conveyance taken and accepted as mere security for a debt, whatever may be its form, is a mortgage. Once a mortgage, always a mortgage, is the maxim, and however broad is the power of contracting, or of disposing, restraints upon the equity of redemption, though deliberately imposed, are not tolerated. The principle cannot be violated by putting the conveyance in the form of an absolute deed. If the creditor accepts the deed on no other consideration, and for no other purpose than as a security for a debt, a case of fraud and trust is made out, which requires the interference of the court to give effect to the equity of redemption if it is denied. This class of cases has always been distinguished from a mere oral agreement by the grantee, that he will hold for the use of the grantor.—2 Lead. Eq. Cases, 964.

It is a very general rule, that to enable a party to show a secret trust in the face of an absolute conveyance, it must appear the purpose was an honest one, or else by secret fraudulent device, a dishonest man would be sure never to lose, and he has the chance of gaining. He may accomplish his fraudulent design, and then he is sure to get back his property, or what is the same thing, keep it for his family. This would be affording encouragment to such frauds." *Murphy v. Hubert,* 16 Penn. St. 50.

The bill avers, and the averment is supported by the evidence of the appellant and of her husband, that the conveyance to Beecher was executed because of the husband's insolvency, and in apprehension that his creditors would, if the title remained in appellant, seek to subject the property to his debts. No conveyance, no contract, no trust, designed to defraud creditors will be enforced by courts of justice. This proposition is conceded by the counsel of appellant, but they insist that the property was not liable for the debts of the husband. The deed was harmless, therefore, and the motive to defeat rights having no existence, and to defraud or delay creditors who could not be injured, cannot render it illegal.—*Dearman v. Dearman,* 4 Ala. 521; *Wilson v. Sheppard,* 28 Ala. 623; *Paulk v. Gillespie,* 34 Ala. 541. A conveyance, or a transfer of property, or of rights of property, not

[Patton v. Beecher et al.]

liable to the payment of debts, cannot be said to defraud creditors, whatever may be the intention of the parties. Upon this principle, the English courts of equity have proceeded in supporting voluntary conveyances of property not liable to be taken on execution for debts.—1 Story's Eq. § 367. But when parties avow that the motive of a conveyance was to screen property from the vigilance of creditors, and to prevent them from resorting to legal remedies to subject it to the payment of debts, they must expect their conduct to be closely and jealously scrutinized. If they would relieve themselves from the imputation of fraud, while confessing that they designed it upon the ground that the property was not liable to the debts from which they intended to shelter it, they must be prepared to show clearly the absence of the liability.

The testimony shows that Beecher paid certainly one-half of the original purchase-money of the premises, and contributed the greater part, probably nine-tenths, of the cost of the improvements. The payment of the purchase-money and of the cost of the improvements, Beecher was to be reimbursed (and was reimbursed to a large extent) according to the evidence of appellant and her husband, by board and lodging, care and attention given him by the appellant. If this be true, to the extent Beecher was so reimbursed, the husband had an interest in the premises which his creditors could have subjected to his debts. It may be, that the appellant devoted her time and attention to the management of the household affairs, and bestowed on Beecher care and nursing in his sickness, and that her energy and industry contributed largely, or entirely, to the maintenance of the family. The earnings and savings of the wife belong to the husband, and he can make no gift of them to her, affecting the rights of existing creditors. A gift of such earnings or savings, is subject to the same rules which apply to other conveyances.—*Pinkston v. McLemore*, 31 Ala. 308; *Shaeffer v. Sheppard*, 54 Ala. 244; *Carleton v. Rivers*, ib. 467. If he should invest, or suffer them invested in improving the real estate of the wife, or in paying the purchase-money of real estate, title to which stands in her name, a court of equity will subject such real estate, at the instance of his creditors, to a liability for such earnings or savings.—*Hoot v. Sorrell*, 11 Ala. 386. When all the facts of this case are carefully examined, the conclusion is irresistible, that the conveyance to Beecher was intended to withdraw the property from the vigilance of the creditors of the husband, covering it from any effort they could make to subject it to their demands, or that Beecher, having paid the purchase-money, and made

[Chambers v. Stringer.]

the improvements, preferred the title should stand in his own name. He may have intended, at some future time, to give the property to the appellant, as he certainly intended that it should, during his life, be a home for her and her family, as well as himself. The intention was not consummated, and the assignment to Chambers disables him from consummating it. In no aspect of the case can the parol trust set up by the appellant be supported.

Let the decree be affirmed.