# Kelly v. Karsner.

*Bill in Equity to establish Parol Trust in Lands.*

1. *Parties to bill.*—When lands are held in trust, express or implied, and the *cestui que trust* dies, the right to enforce the trust descends to all of his heirs equally, and all are necessary parties to a bill filed for that purpose.

2. *Parol trust in lands.*—Oral evidence, to overturn a trust in any case, must be clear and convincing; and can not be received (Code, § 2199) to engraft an express trust on a conveyance of lands which is absolute in its terms.

3. *Resulting trust, implied from payment of purchase-money.*—A resulting trust in lands, in favor of the person who advances the purchase-money, the title being taken in the name of another, is matter of implication only, and is easily overturned; and when the money is advanced by a husband (or father), and title taken in the name of the wife (or child), the presumption of a trust is overturned, and the presumption arises that an advancement was intended.

4. *Trust in fraud of creditors.*—When lands are conveyed by a debtor to his wife or child, with the intent to place the property beyond the reach of his creditors, and to be held in secret trust for his own benefit, neither he nor his heirs can enforce the trust.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 10th January, 1881, by Joseph B. Kelly and Fleming J. Kelly, sons of Russell J. Kelly, deceased, against Mrs. Eliza J. Karsner, who was their sister, George W. Karsner, her husband, and Mrs. Keziah W. Kelly,

who was the widow of said Russell J. Kelly; and sought to enforce an alleged trust in a tract of land, for the equal benefit of the complainants and Mrs. Karsner, and to have the land sold for partition among them, subject to an admitted charge or lien in favor of the widow. The tract of land had belonged to said Russell J. Kelly, and was conveyed by him, by deed dated May 18th, 1866, to his wife, Mrs. Keziah W. Kelly, as her sole and separate estate. This deed, which was duly recorded, and a copy of which was made an exhibit to the bill, recited as its consideration that Mrs. Kelly had relinquished her right of dower in other lands, at the instance and request of her husband, and on his promise to convey this tract to her in consideration of such relinquishment; but the bill alleged, that this deed was executed by the said Russell J., and accepted by Mrs. Kelly, "with an understanding and agreement between them that she should hold said land in trust for the joint benefit of herself and said Russell J. Kelly." On the 8th October, 1874, Mrs. Kelly conveyed said tract of land, by deed of that date, which was duly acknowledged and recorded, and a copy of which was made an exhibit to the bill, to Mrs. Eliza W. Karsner. The consideration recited in this deed was the present payment of $1,000; but the bill alleged, that the consideration in fact was "said Russell J. Kelly's relinquishment of his marital rights in his said wife's lands in Tennessee, and one thousand dollars to be afterwards paid to her,"—this being the charge or lien admitted by the bill; "that said deed was executed at the request of the said Russell J., for his sole benefit, and without any consideration from the said Eliza J. Karsner, and was accepted by her with the understanding and agreement that she would hold said lands in trust for the sole benefit of the said Russell J. Kelly." The bill alleged, also, that said Russell J. Kelly died, intestate, in the year 1878, "leaving his widow, said Keziah W. Kelly, and three children—namely, your orators and said Eliza W. Karsner—who were his only heirs-at-law surviving him;" and that Mrs. Karsner claimed the land as her individual property. A joint and several answer was filed by Mrs. Karsner, her husband, and Mrs. Keziah W. Kelly; denying the alleged trusts, or parol agreements, as to each of the deeds, and insisting that each was an absolute conveyance in fact, as on its face it purported to be. On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

CABANISS & WARD, and WALKER & SHELBY, for appellants. (1.) The bill seeks to enforce a resulting trust in land, implied or arising from the payment of the purchase-money or consideration; and not, as the chancellor erroneously supposed, the

[Kelly v. Karsner.]

execution of a parol trust, or verbal contract in relation to land. Such contract or trust, resting in parol, is expressly forbidden by the statute, and can not be enforced.—Code, § 2199; *Patton v. Beecher*, 62 Ala. 579. This statute, and this principle, apply only to the conveyance from Russell J. Kelly to his wife; as to which deed there was no resulting trust, the grantor relying solely on the verbal agreement, which he could not have enforced. But the conveyance from Mrs. Kelly to Mrs. Karsner stands on different facts: its consideration proceeded wholly from Russell J. Kelly. who dictated the terms on which the property should be held; these terms were accepted by the grantor, and the property conveyed as agreed on; and the grantee, who had no participation in the transaction, and even no knowledge of the facts at the time, afterwards accepted the deed with full knowledge of the facts, and agreed to hold the property on the terms agreed on. The trust arises from the facts—the payment of the purchase-money by one person, while the title is conveyed to another; and not from the agreement, admissions, or declarations of the parties, recognizing the trust which the law implies from the facts. The complainants rely on the implied trust, which the law raises from the facts stated and proved; and they allege and prove the declarations and admissions of the parties, in recognition of this implied trust, to rebut the presumption of a gift or advancement, which might otherwise be implied. If the law would raise a resulting trust from the facts, and would enforce that trust; on what principle can the express admissions and declarations of the parties, in recognition of that trust, impair or destroy it? That a married woman may be made or declared a trustee, and that a trust may be implied and enforced against her, in favor of her husband, on account of his payment of the purchase-money, has been expressly decided by this court.—*Harden v. Darwin & Pulley*, 66 Ala. 55. In the absence of direct proof to the contrary, a gift or advancement would be presumed; and yet, here, the effort is to make the direct proof defeat the resulting trust. A court of equity will regard that as well done, which it would compel the parties to do; and it ought, on this principle, to give effect to the admissions and declarations of parties, in recognition of a trust which it would enforce against them *in invitum*. Such a trust, as between these parties, could only be proved by their admissions and declarations.

2. No question arises, in this case, as to the rights of creditors, or the validity of the transaction as against them. The intention of Russell K. Kelly to place the property beyond the reach of supposed creditors, of which there is some evidence, is outside of any issue made by the pleadings. If the issue had been properly presented, the complainants might have shown, as the

[Kelly v. Karsner.]

fact is, that he was legally discharged from the debts on which he was sued, and successfully defended the suits against him ;. and there could be no fraud, where there was no one to be defrauded. Besides, the consideration of his deed to Mrs. Kelly was the relinquishment of his marital rights to her lands in Tennessee, which could not be a fraud on his creditors in Alabama. And if there was any fraud intended or attempted, as between Kelly and his wife, Mrs. Karsner can not take advantage of it.—*McBlair v. Gibbes*, 17 Howard, 236; *Armstrong v. Toler*, 11 Wheaton, 253.

JNO. D. BRANDON, and W. B. WOOD, *contra.*—(1.) The bill does not seek to enforce a resulting trust, which arises by mere implication of law, but an express trust, created by the contract and agreement of the parties; and such a trust in land can not be created or established by parol evidence.—Code, § 2199; *Patton v. Beecher*, 62 Ala. 587; *Glass v. Hulbert*, 102 Mass. 24;. *Hoge v. Hoge*, 1 Watts, 163; *Movan v. Hayes*, 1 John. Ch. 339; Perry on Trusts, §§ 79, 81; Browne on St. Frauds, 94; 1 Paige, 494. (2.) If such trust could be established by parol, the evidence adduced' in this case is not sufficient for that purpose; the complainants' testimony being indefinite and inconsistent, and contradicted on all material points by the defendants. 1 Story's Eq. § 152; Perry on Trusts, § 137; *Howland v. Blake*, 97 U. S. 626; *Tilford v. Torrey*, 53 Ala. 120; *Garrett v. Garrett*, 29 Ala. 439; *Larkins v. Rhodes*, 5 Porter, 195; *Lee v. Browder*, 51 Ala. 288. (3.)' If there was any secret trust, it was intended to place the property beyond the reach of Kelly's creditors; and this would be an insuperable obstacle to its enforcement.

STONE, J.—The present bill was filed by Joseph B. and Fleming J. Kelly, against Eliza J. Karsner, their sister. All the parties, complainants and defendant, are children of Russell J. Kelly, deceased. The purpose of the bill is to have a trust declared, and to obtain partition of the lands described in the bill. It is not disputed that, up to 1866, the title to the lands was in Russsll J. Kelly. At that time, he conveyed the lands, upon a recited valuable consideration, to his wife, Keziah W. Kelly, to her sole and separate use. The title remained in her until 1874, when Russell J. and his wife, Keziah W., had a voluntary separation. Being about to separate, Mrs. Kelly proposed to re-convey the lands to Russell J. Kelly. He declined to have the title re-conveyed to him, and, at his instance and suggestion, they were conveyed by Mrs. Keziah W., to Eliza Karsner, who was not present, and, at that time, had no knowledge of the transaction. She testifies, she was notified of it

[Kelly v. Karsner.]

by her father, within a few days after the deed was executed. This deed has a recited consideration of one thousand dollars. The bill avers that the deed from Russell J. to Keziah W. Kelly was made in trust for both the grantor and grantee; and that the deed from Keziah W. to Eliza J. Karsner was made in trust for the said Russell J.

The frame of the bill would indicate that, when it was filed, the expectation and intention were to prove that the conveyance was made to Mrs. Karsner, in express trust for her father; and the complainants bring this bill as heirs-at-law of said Russell J., claiming in his right. Whether we consider the case of complainants as resting on such alleged express trust, or as relying on the doctrine of resulting trust—namely, that Russell J. Kelly paid the consideration money which induced Mrs. Kelly to convey to Mrs. Karsner, and therefore a trust resulted by implication of law in favor of said Russell J.,—it would seem that, in either aspect, the bill is imperfect. It is shown that Mr. Kelly had other heirs; and if the lands were held in trust for him, whether by express agreement, or under legal implication, when he died, that beneficial interest descended alike to all his heirs, and all should be made parties to this suit.

All the testimony offered in proof of an express trust is oral, it not being alleged, or shown, that there was any writing declaring such trust. The testimony is as inharmonious and contradictory as can be found in the annals of judicial contestation, even since parties have been made competent witnesses in their own causes. The tendency of complainants' proof is, not that a trust was created for the benefit of the father, but that the trust was for their benefit, in common with their sister, Mrs. Karsner; and the proof on this point, even by complainants' witnesses, is not in harmony. Some witnesses state, simply, that the elder Kelly only said his sons must have more land, without specifying quantity. Defendant's witnesses testify there was no trust in either conveyance. Much of the testimony, on both sides, is mere hearsay. If such testimony were competent to establish an express trust, engrafted on an absolute conveyance of lands, we should hesitate before pronouncing complainants' proof sufficient. Oral proof, to overturn a writing, should be clear and convincing. But such proof can not be heard, to engraft an express trust on a conveyance of lands, absolute in its terms.—*Patton v. Beecher*, 62 Ala. 579. So, we must treat this case, as if the oral proof of intention had not been made.

It is contended, in the second place, that Russell J. Kelly paid a valuable consideration to Mrs. Kelly, for the conveyance she made to Mrs. Karsner, and that therefore a trust resulted to him to claim and have the title, because the valuable con-

[Kelly v. Karsner.]

sideration moved from him; and such trust, at his death, descended to his heirs. If there were anything in this point, the testimony as to consideration is subject to much criticism. The testimony of Mrs. Kelly is, that only a power of attorney was given to her; and if so, that power was revocable, and was of little or no value. She also says this was an after-thought, and not the consideration of her deed to Mrs. Karsner. But we need not decide this.

The doctrine of resulting trust is one of sheer implication; and that implication may be easily overturned. If a husband or father purchase lands with his own means, and have title made to his wife or child, the presumption of a resulting trust is overturned, and the contrary presumption arises, that the purchase and conveyance were intended as an advancement for the nominal purchaser.—Perry on Trusts, §§ 143-4, and the numerous authorities cited. So, even if Russell J. Kelly paid to his wife a valuable consideration for the conveyance she made to Mrs. Karsner, his daughter, no implication of a trust arises in his favor.—*Hatton v. Landman*, 28 Ala. 127.

There is another insuperable obstacle to the relief prayed in this bill. The testimony which proves the transactions which resulted, first, in the conveyance to Mrs. Kelly, and then from her to Mrs. Karsner, shows clearly that the elder Kelly's purpose was, to place the property beyond the reach of creditors, to whom he feared he would be made liable, as surety for others. Now, no matter what consideration he may have paid to his wife, Mrs. Kelly, for the conveyance she made to Mrs. Karsner, the act of taking—intentionally taking—title in the name of his daughter, with intent thereby to delay, hinder, or defraud his creditors, disarms him of all right to recover, no matter what her agreement to hold in trust, or to re-convey, may have been. Not that such a conveyance gives her an honest right to hold, but, because of his vicious intent, he forfeits all right to recover.—*King v. Avery*, 61 Ala. 479; 3 Wait's Act. & Def. 199.

Affirmed.