# Brock *v.* Brock.

*Bill in Equity to enforce Parol Trust in Lands.*

1. *Parol trust in lands; fraud as exception from statute.*—A mere verbal promise by the grantee in a deed for land, absolute on its face, that he will hold for the use of the grantor, and will reconvey on re, quest, or on a specified contingency, is void under the statute (Code-

[Brock v. Brock.]

§ 1845); and the subsequent repudiation of such promise by the grantee is not such a fraud as authorizes a court of equity to grant relief by enforcing the trust, in the absence of fraud, imposition or mistake at the time the deed was executed, though it may be looked to as evidence bearing on the question of fraud at that time.

2. *Pleading statute of frauds, or statute declaring void all parol trusts in lands.*—An answer to a bill which seeks to enforce a parol trust in lands, alleging by way of plea that "respondent made no agreement in writing with complainant, such as is set up in said bill of complaint, nor was any such agreement made for her by any person duly authorized thereto by her in writing; nor did she make, or authorize any person for her, or in her name, to make any such agreement, and she avers that said alleged agreement in reference to said land is void under the statute of frauds, and can not be enforced against her,"— sufficiently sets up as a defense the statute declaring void all parol trusts in land (Code, § 1845), which is in substance a part of the statute of frauds, though not so arranged in the Code.

APPEAL from the Chancery Court of Calhoun.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 9th June, 1888, by E. C. Brock, against his wife, Mrs. M. A. Brock; and sought to establish and enforce a trust in a tract of land containing about 70 acres, which he had conveyed to his wife by deed of gift in September, 1880. The grounds on which relief was sought, and the main facts connected with the execution of the deed, are stated in the opinion of the court. Mrs. Brock, in her answer, denied any verbal promise on her part, or condition annexed to the deed, as alleged in the bill; demurred for want of equity, assigning various grounds of demurrer; and added, by way of special plea, "that respondent made no agreement in writing with complainant, such as is set up in said bill of complaint, nor was any such agreement made for her, by any person duly authorized thereto in writing; nor did she make, or authorize any person for her, or in her name, to make any such agreement as is set up in said bill of complaint, in reference to said tract of land; and respondent avers that said alleged agreement in reference to said land is void under the statute of frauds, and can not be enforced against her." On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is here assigned as error.

BROTHERS, WILLETT & WILLETT, for appellant, submitted a printed argument of more than 70 pages, in which they discussed the evidence, argued the legal points involved, and critically analyzed most of the leading cases cited; but only a brief abstract of their argument is here presented, as required by statute.

(1.) The defendant's answer pleaded the statute of frauds, but not the statute against parol trusts in land; and not hav-

[Brock v. Brock.]

ing been specially pleaded, that statute was waived as a de-
fense.—*Bailey v. Irwin,* 72 Ala. 505; 1 Dan. Ch. Pr. 656;
Story's Eq. Pl., § 765; *Jones v. Latham,* 70 Ala. 164.

(2.) If the deed from the complainant to his wife was ex-
ecuted on the faith of her express promise, as alleged, to again
return to him and live with him, on his reformation, and she
then intended to repudiate that promise, this was a fraud on
her part, against which a court of equity will grant relief, as
all the authorities agree; and if she made no express promise,
but allowed her husband to act on the faith of her promise
implied from all the attendant circumstances, this was equally
a fraud, against which a court of equity will grant relief. The
appellant insists that the evidence establishes an express
promise, notwithstanding the literal and evasive denials of the
answer; that a promise will be implied from a consideration
of the relation existing between the parties, and all the at-
tendant circumstances; and that the subsequent repudiation
by the defendant of the conditions on which she received and
accepted the deed, whether express or implied, constitute a
fraud against which equity will grant relief, and hold her liable
as a trustee *ex maleficio.* The case of *Barrell v. Hanrick,*
42 Ala. 60, is directly in point, and is fully sustained by *Ken-
nedy v. Kennedy* (2 Ala. 571), *Bishop v. Bishop* (13 Ala.
475), and the great weight of adjudged cases, English and
American. In such cases, the court does not engraft excep-
tions upon the statute, but acts on the theory, that the pre-
vention of fraud is the first and highest duty of a court of
equity as a court of conscience.—Browne on Statute of
Frauds, 4th ed., 438–9; Story's Equity, 13th ed., §§ 858–9;
1 Pom. Equity, § 430; 2 *Ib.,* §§ 807, 1055; *Hunt v. Roberts,*
40 Maine, 187; *Hoge v. Hoge,* 1 Watts, 163, or 26 Amer.
Dec. 52; *Cameron v. Ward,* 8 Geo. 245; *Jones v. Mc-
Dougald,* 32 Miss. 179; *Arnold v. Cord,* 16 Ind. 177; *Byrne
v. Godfrey,* 4 Vesey, 6; *Strickland v. Aldridge,* 9 Vesey, 516;
*Jenkins v. Eldridge,* 3 Story, 182; *Brison v. Brison,* 75 Cal.
525, or 7 Amer. St. Rep. 189; *Dickerson v. Dickerson,*
24 Nebr. 530; *Wood v. Rabe,* 96 N. Y. 426; *Whitton v. Rus-
sell,* 1 Atk. 448; Prec. in Ch. 3; 1 Vern. 296; 2 Vern. 506;
3 Wall. C. C. 284; 1 P. W. 620; 1 Stra. 236; *Garth v. Cotton,*
3 Atk. 755; *Oliver v. Oliver,* 4 Rawle, 141, or 26 Amer.
Dec. 123; 16 Rawle, 345, or 16 Amer. Dec. 575; *Meyer v.
Mitchell,* 75 Ala. 475; *Pippen v. Manning,* 86 Ala. 357;
*O'Hara v. Dudley,* 47 Amer. Rep. 53; Freem. Ch. 284;
5 Sim. 485; 6 Vesey, 52; 32 N. J. Eq. 135; 18 N. Y. 546;
34 Wisc. 405; 27 Gratt. 152; 26 Geo. 691; 107 N. Y. 73;
*Stewart v. Cattle Co.,* 128 U. S. 383; *Walgrave v. Tebbs,*

[Brock v. Brock.]

2 K. & J. 321; *Russell v. Jackson*, 10 Hare, 204. In the case of *Patton v. Beecher*, 62 Ala. 579, the transaction was an attempted fraud on creditors; here, the question arises between the parties to the deed, and the rights of creditors are not involved.

KNOX & BOWIE, and E. H. HANNA, *contra.*—(1.) The alleged agreement is denied by the answer, and is not established by the evidence. On the contrary, the circumstances under which the deed was executed and accepted, repel the inference of any agreement on the part of Mrs. Brock, express or implied. (2.) If there was any agreement, express or implied, it was contingent on the husband's reformation; and the evidence shows that he has not reformed. (3.) The alleged agreement was void under the statute (Code, § 1845), and a court of equity will not enforce it.—*Patton v. Beecher*, 62 Ala. 579; *Rose v. Gibson*, 71 Ala. 35; *Whaley v. Whaley*, 71 Ala. 159; *Kelly v. Karsner*, 72 Ala. 106; *Stringfellow v. Ivie*, 73 Ala. 209; *Bibb v. Hunter*, 79 Ala. 351; *Manning v. Pippen*, 86 Ala. 357; *Walker v. Locke*, 5 Cush. Mass. 90; *Blodgett v. Hildreth*, 103 Mass. 484; Perry on Trusts, § 79; Browne Stat. Frauds, § 82; 2 Reed Stat. Frauds, § 820. The cases of *Kennedy v. Kennedy*, 2 Ala. 571, and *Bishop v. Bishop*, 13 Ala. 475, were decided before the enactment of the statute, which was first embodied in the Code of 1852.

SOMERVILLE, J.—The bill is filed by the appellant, Brock, against his wife, seeking to establish in his behalf a *trust* in certain lands in the city of Anniston, which had been conveyed to her by him, and afterwards sold, the proceeds being retained by the wife. The husband had conveyed the lands to respondent in September, 1880, after a separation between them, brought about by his own intemperate habits, and his unkind treatment of her. The deed was in fee simple, free on its face from any words of condition, or trust. The land was probably worth $2,000 when the deed was made. It was sold, some seven years afterwards, for $56,000.

It is *first* insisted that the correspondence between the parties by letter establishes an express trust, the recognition of which will be enforced by a court of equity; and *secondly*, that failing in the first contention, still the parol evidence establishes such fraud on the part of the grantee in obtaining the legal title, as to constitute her a trustee *ex maleficio*.

The original bill alleged that the deed was accepted by Mrs. Brock upon the verbal condition, or promise, that if the complainant, who proposed going abroad, "returned home a sober

[Brock v. Brock.]

man, free from his habits of dissipation", his said wife would
"return to him, and live with him as his wife", and the deed
in such event was to become "null and void, and of no effect."
Otherwise, the property was to be the wife's absolutely. A
demurrer being sustained to the original bill, which, as we shall
see, was manifestly without equity, it was amended, by
charging that "the promises made by his said wife, which led to
the execution and delivery of said deed, conveying said land
to her, were *false and fraudulent at the time they were made*,
and were made by her with the *intention* of never complying
with them, *at the time* they were made."

The answer of respondent explicitly denies the alleged
promises, and all the averred facts from which any trust, ex-
press or constructive, could be inferred. The statute of frauds
is also specially pleaded.

We propose for the sake of brevity, and we trust without
any sacrifice of clearness, to consider the two contentions of
the appellant measurably together. It is so clear to our mind
that the letters of the parties fail to contain anything from
which an express trust can be inferred, that we do not deem
it necessary to dwell at any length on this feature of the case.
The letter of September 3d, 1880, written by Brock to his
wife, delivered by one Sloan, and which accompanied the de-
livery to her of the deed, contains no allusion to the alleged
promise or condition, but affirms, in effect, an unconditional
delivery. "I send you," he writes, "the deed to the Wood-
stock place. You keep it yourself." There is nothing in the
subsequent letters which furnish any written evidence of such
a trust. It is not declared, as we have said, in the deed itself.
It does not appear in the letter accompanying the deed. No
subsequent letter of the wife furnishes evidence of it. No
subsequent letter of the husband, the alleged *cestui que trust*,
would be competent to prove it. An interested party can not
be permitted, by his own *subsequent* declarations, in writing
or otherwise, to incorporate an express trust in an absolute
conveyance previously executed by him.—2 Pom. Eq. Jur.
§ 1007. No such letters, moreover, are produced, nor are their
contents satisfactorily proved even by secondary evidence.

The correspondence can, however, be considered in connec-
tion with the oral evidence relied on to show the alleged fraud-
ulent contrivance on the wife's part to secure the legal title to
the property.

It is clear to us that, under the testimony in this case, the
chancellor's ruling in dismissing the bill is justified by the
principles declared by this court in *Patton v. Beecher*, 62 Ala.
579. If the conclusions reached in that case be correct, that, in

our judgment, is an end of every plausible contention urged by the appellant in this case.

Section 1845 of the present Code declares: "*No trust* concerning *lands*, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, *can be created, except by instrument in writing*, signed by the party creating or declaring the same, or his agent or attorney lawfully authorized thereunto in writing." This section corresponds with the seventh and eighth sections of the English statute of frauds, and is identical with section 2199 of the Alabama Code of 1876, which was construed in the case of *Patton v. Beecher, supra.* The clearly announced doctrine of that case is, that the mere parol promise by the grantee in a deed, that he will hold for the use of, and reconvey to the grantor on request, or on a specified contingency, is a trust which is required by the statute to be created or declared in writing; and that, if it is not so created or declared, in the absence of some clear evidence of fraud, imposition or mistake, at the time of the execution of the conveyance, the grantee's repudiation of the alleged parol promise is not a fraud against which a court of equity can relieve. The contrary doctrine, which seems to have been broadly announced in *Barrell v. Hanrick*, 42 Ala. 60, was repudiated.

We can add nothing to the exhaustive argument embodied in the opinion of Chief-Justice BRICKELL in that case. The summary of it is contained in the following extract: "The plain meaning of the statute is, that a trust in lands, not arising by implication or construction of law, can not be created by parol—that a writing signed by the party creating or declaring the trust is indispensable to its existence. Fraud, imposition or mistake, in the original transaction, may constitute the purchaser, or donee, a trustee *ex maleficio.* It is *fraud then*, and not *subsequent fraud*, if any exist, which justifies a court of equity in intervening for the relief of the party injured by it; as it is the payment of the purchase-money at the time the title is acquired, which creates a resulting trust, and not a subsequent payment, whatever may be the circumstances attending it.—*Barnett v. Dougherty*, 32 Penn. 371. When the original transaction is free from the taint of fraud or imposition; when the written contract expresses all the parties intended that it should; when the parol agreement, which is sought to be enforced, is intentionally excluded from it; it is difficult to conceive of any ground upon which the imputation of fraud can rest, because of its subsequent violation or repudiation, that would not form a basis for a similar imputation, whenever any promise or contract is broken.— *Wilson v. Watts*, 9 Md. 356–436."

[Brock v. Brock.]

"It is an annihilation of the statute," forcibly continues the Chief-Justice, "to withdraw a case from its operation, because of such violation or repudiation of an agreement or trust [which] it declares shall not be made or proved by parol. There can be no fraud, if the trust does not exist, and proof of its existence by parol is that which the statute forbids. In any and every case, in which a court is called to enforce a trust, there must be a repudiation of it, or an inability from accident to perform it. If the repudiation is a fraud, which justifies interference in opposition to the words and spirit of the statute, the sphere of operation of the statute is practically limited to breaches from accident, and no reason can be assigned for the limitation."—*Patton v. Beecher*, 62 Ala. 579.

The soundness of this reasoning seems to us unanswerable. The question involved has many times been argued before us, and the authority of the decision has since been frequently challenged at the bar; but we have, without doubting the correctness of the principles stated, adhered to and re-affirmed the construction of the statute thus adopted, in many subsequent deliverances more or less analogous.— *White v. Farley*, 81· Ala. 563; *Kelly v. Karsner*, 72 Ala. 106; *Rose v. Gibson*, 71 Ala. 35; *Whaley v. Whaley*, Ib. 159; *Manning v. Pippen*, 86 Ala. 357.

The basis of this decision is the settled principle, that a trust will never be raised by the breach of a *mere* verbal promise to purchase lands, and convey them on request. Or, as stated by a learned author : "The fraud which suffices to lay a foundation for such a trust, is not simply that fraud which is involved in every deliberate *breach of contract*." "The true rule," he adds, "seems to be, that there must have been an original misrepresentation, by means of which the legal title was obtained; and an original intention to circumvent, and get a better bargain, by the confidence reposed."—Browne on Stat. Frauds, (3d Ed.), § 94. "But in no case will the grantee be deemed a trustee, if he used no fraud or deceit in getting his title, although he verbally promised to hold the land for the grantee." § 95. A like rule was long ago declared in *Montecute v. Maxwell*, 1 P. Wms. 618, where Lord Chancellor Parker said in reference to the English statute of frauds: "In cases of *fraud*, equity would relieve even against the words of the statute; but where there is no fraud, only relying upon the honor, word or promise of the defendant, the statute making these promises void, equity will not interfere." As said by Mr. Browne, in reference to this case, if there be not some distinction such as this, "there is an end of the statute of frauds so far as courts of equity are concerned."

[Brock v. Brock.]

The doctrine of *Patton v. Beecher*, *supra*, is fully approved and sustained by Mr. Pomeroy in his work on Equity Jurisprudence, §§ 1055–1056: "In order," he observes, "that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be virtually abrogated; there must be an element of *positive fraud accompanying the promise*, and by means of which the acquisition of the legal title is. wrongfully consummated. Equity does not pretend to enforce verbal promises, in the face of the statute; it endeavors to prevent and punish fraud, by taking from the wrongdoer the fruits of his deceit, and it accomplishes this object by its. beneficial and far-reaching doctrine of constructive trusts."

The true philosophy of this doctrine is thus succinctly stated by the same author, in a note to the case of *Glass v. Hulburt*, 102 Mass. 24; 3 Amer. Rep. 418, criticized by him: "The principle is unalterably fixed in the foundation of the jurisprudence, that equity will not suffer a statute, passed for the purpose of preventing fraud, to be used as an instrument for accomplishing fraud; the statute will be *uplifted*, when necessary to prevent such a result."—2 Pom. Eq. Jur. § 867, p. 341, *note*. Or, as said by Lord Westbury, in *McCormick v. Grogan*, L. R. 4 H. L. 82: "The court does not set aside the act of Parliament, but it fastens upon the individual who gets the title under that act, and imposes upon him a personal obligation, because he applies the act as an instrument for accomplishing a fraud."

In the case of *Manning v. Pippen*, 86 Ala. 357, *supra*, the principle declared in *Patton v. Beecher* was applied to the case of a grantee in a deed procuring his title by a fraudulent promise to execute a will. It was said: "If there was a *fraudulent intent in obtaining the deed*, without intention to make the will, and pursuant to it the will was not made, then the question of the statute of frauds becomes immaterial." In such case, it was said, the court would hold the grantee to be a trustee *ex maleficio*.

The main point which we wish to emphasize is, that the mere breach of an oral agreement, standing alone, though often a moral wrong, is not sufficient to establish that fraud in procuring the title which is requisite to render the grantee, or devisee, a trustee *ex maleficio;* although the fact of such breach may, of course, be looked to, in connection with the other circumstances of the case, as sometimes constituting one of several links in a chain of facts going to prove fraud. If this were not so, the statute of frauds would practically be re-

pealed, because no case can arise in the courts under it, except where such a breach is charged, other than cases of fraud, either positive or constructive. And hence, "it seems to be requisite," as said by in the often quoted words of Chief-Justice Gibson in *Hoge v. Hoge*, 1 Watts, 163; 26 Amer. Dec. 52, "that there should appear to have been an agency, active or passive, on the part of the devisee (or grantee) in procuring the devise (or deed)." The same view, in effect, is taken in *Williams v. Vreeland*, 32 N. J. Eq. 734. "Parol evidence," it is there said, "is not admissible to vary a will. The ground upon which such trust is set up is simply that of fraud, practiced by the party on whom the trust is sought to be fastened, and nothing short of this can ever be held sufficient. For the prevention of fraud, the trust is engrafted on the gift by admitting parol testimony, in order to prevent the donee from appropriating property to a purpose different from that for which he undertook to hold it."

The great point of difficulty in the adjudged cases, bearing on this subject, seems to me to arise from the differences of opinion as to what facts, *additional* to a mere breach of promise by a. grantee, or devisee, are requisite in order to establish such fraud as will constitute the promisee a trustee *ex maleficio*. But we need pursue this discussion no further. We are satisfied with the rule announced in *Patton v. Beecher*, 62 Ala. 579, although there are many authorities which ably maintain the opposite view. The following may be consulted with profit, some of which support, and others of which are opposed to the foregoing view: 2 Pom. Eq. Jur. §§ 1055–1056; *Chambliss v. Smith*, 30 Ala. 366; 8 Amer. & Eng. Encyc. Law, 737–738; *Glass v. Hulbert*, 3 Amer. Rep. 418 (in connection with 2 Pom. Eq. Jur. § 867, *note*); *Murrell v. Watterson*, 7 Kans. 197; *Rasdall v. Rasdall*, 9 Wis. 379; *Box v. Stanford*, 51 Amer. Dec. 142; *note*, 144–146; *Marshman v. Conklin*, 21 N. J. Eq. 546; 2 Reed on Stat. Frauds, §§ 822–823; 2 Story's Eq. Jur. § 781; *Levy v. Brush*, 45 N. Y. 589; *Wood v. Rabe*, 48 Amer. Rep. 640; *Rose v. Hayden*, 57 Amer. Rep. 145; *Ryan v. Dox*, 90 Amer. Dec. 696; *Johnson v. Hubbell*, 66 Amer. Dec. 773; *Brison v. Brison*, 7 Amer. St. Rep. 189; and the many other cases cited in the excellent briefs of counsel.

In applying the above declared principles to the facts of this case, we need scarcely add that it must be done in full recognition of the rule of equity governing the character of proof required in cases of this nature. No parol trust will be engrafted on a legal title, which the instrument of conveyance makes absolute on its face, unless with the greatest caution, and

where the fraud necessary to create the trust is established by clear and convincing proof.

The salient facts are : The deed in question was made to the wife without any suggestion, or procurement whatever on her part, and during the period of separation, when there was to some extent a suspension of that mutual confidence incident to the marital relation. The idea of the conveyance originated with the husband, unsolicited by the grantee,—it matters not whether in a motive to rescue the property, then worth only about two thousand dollars, from the hazard of financial wreck nearly always incident to drunken habits, or to make some slight reparation for the wrongs against marital loyalty, or to enable a struggling wife to put bread in the mouths of her four children, to whom the grantor owed the high duty of mainten- ance and education. More than this ; the wife at first refused to accept the deed, and persisted in declining to do so, until she finally yielded to the persuasion of her father, and the further solicitations of the husband. It is an important fact that, even according to the averments of the bill, the deed created in the wife an interest which was to be absolute, *until* the alleged verbal condition was fulfilled. The property was to be hers in fee simple, *unless* the grantor (1) reformed his intemperate habits, and (2) returned to live with her so as to resume his marital relations. These alleged conditions were conditions subsequent, and were verbal.

The evidence shows that, on a former occasion, after a like separation, originating in like unfortunate causes, Mrs. Brock had been forced by cruel treatment to leave her husband's home, but had returned at his solicitations, and on the faith of his assurances of repentance and promises to reform. This experiment at reconciliation proved a failure through his fault. He again fell a victim to his tyrannical habits of intemper- ance. He again abused and maltreated her, and she was forced to seek refuge for protection in her father's household. These facts are pertinent to the question of her good faith (1) in yielding to the husband's solicitations to accept the deed ; and (2) in refusing to again make the experiment of resuming with him the closest of possible relations to which human affection and confidence can give origin.

The evidence possibly does not furnish such clear and con- vincing proof of the alleged oral promise as we could desire, even were the question of its existence regarded as material to the decision of this case. But, conceding that it was implied from the facts, there is no satisfactory proof that, at the time the deed was accepted, the wife entertained any fraudulent purpose not to carry it out. We have not failed to scrutinize

[Martin v. Carter.]

the evidence adverted to by appellant's counsel as tending to prove this contention; but it falls far short of convincing us, when viewed in connection with the other pregnant facts of the case bearing on this issue.

If there was such a verbal promise, the subsequent failure to observe it was a mere breach of contract, the proof of which would be excluded by the very terms of the statute. The effort is nothing more than an attempt to qualify an absolute title in fee simple, by oral evidence of an alleged extrinsic agreement by the grantee to reconvey on a condition subsequent not included in the writing. This is not permissible. It has often been said that courts of equity will not sit to take jurisdiction of mere questions of morality involved in breaches of contract, untainted with fraud, imposition, or mistake. When sitting as courts of conscience, they do so to enforce the virtue of honesty in accordance with the settled principles of a system of jurisprudence, not according to vague ideas of what may be considered *morally*, as opposed to what is *legally* right or wrong.

We entertain no doubt of the proposition, that the answer sufficiently presents the issue upon which the decision of this case is made to turn. Section 1845 of the Code, above construed, is commonly understood to be a part of our statute of frauds, though not so technically arranged in our Code under this statutory nomenclature, corresponding as it does with the analogous sections 7 and 8 of the English statute of 29 Charles II. That, however, is not material. The facts are pleaded which bring the present case within the influence of this section, and that is all that is necessary.

The rulings of the chancellor are all in accordance with the views above presented, and his decree must be affirmed.

