# Manning v. Pippen.

*Bill in Equity for Cancellation of Deed.*

1. *Verbal promise to make will, as consideration of deed.*—A verbal promise to make a will devising land to the promisee, in consideration of his present conveyance of the land to the promisor, is void under the statute of frauds (Code, §§ 1732, 1845), and a court of equity will not grant relief based on it.

2. *Part performance avoiding statute of frauds.*—If the purchaser of land, under a verbal contract, is placed in possession, and pays the purchase-money, or a part thereof, the contract is taken out of the statute of frauds (Code, § 1732); but the two facts must concur, and a court of equity can not extend the terms of the statute by dispensing with either. (*Rakes v. Pope*, 7 Ala. 161, limited to sales of personal property.)

3. *Fraudulent promise to make will.*—If a person procures the execution of a conveyance of land by promising to devise the land by will to the grantor, having at the time the intention not to do so, and afterwards dies intestate, the fraud will vitiate the transaction. and a court of equity will grant relief against the conveyance; but the fraud must be established by clear and convincing evidence, and relief must be sought seasonably after the discovery of the fraud; and the subsequent breach of the promise, by failing and refusing to execute such will, is not, of itself, conclusive or sufficient evidence that the promise was made with a fraudulent intent.

4. *Same; allegations as to discovery of fraud.*—The bill being filed by the husband, against the heirs at law of his deceased wife, seeking relief against a conveyance of land, which he had executed to her, as alleged, in consideration of her fraudulent promise to devise it to him by will, and alleging that "the fact that it was her intention at the time not to comply with her said promise, and that she was employing a mere stratagem, and the evidence of such intention, did not become known to your orator until he filed his original bill in this cause, though he made repeated and diligent inquiry in reference thereto;" these averments do not meet the strict requirements of the rule applicable in such cases, because they do not show how the fraud was discovered, nor why it was not discovered sooner.

[Manning v. Pippen.]

5. *Same; laches*—The lapse of sixteen years after the alleged
promise was made, during which period the wife repeatedly refused
to execute her, will as promised, bars any right to relief against her
heirs after her death, even if the averments of the bill were fully and
precisely proved.

APPEAL from the Chancery Court of Pickens.

Heard before the Hon. WM. H. TAYLOE.

The facts of this case are fully stated in the opinion of
the court, and in the former report (86 Ala. 357-64), and no
further statement is necessary. On final hearing, on plead-
ings and proof, the chancellor dismissed the bill: and his
decree is assigned as error.

WATTS & SON, and M. L. STANSEL, for appellant.—(1.) The
promise to make a will is clearly proved. That promise
was a valuable consideration, and proof of it was admissible
notwithstanding the recitals of the deed.—*Manning v. Pip-
pen*, 86 Ala. 357. (2.) A promise to do a thing by will is
not within the statute of frauds.—Bish. Contracts, § 1279 ;
*Jilson v. Gilbert*, 26 Wisc. 637. But, if the promise was
within the statute, the contract having been fully executed
by plaintiff, the defendants can not take advantage of it.
When everything is done under a verbal contract for the
sale of land, except the payment of the purchase-money,
the purchaser can not set up the statute of frauds in avoid-
ance of the contract, or to avoid the payment of the pur-
chase-money. To permit this would allow him to commit a
fraud on the seller, which a court of equity will not sanction.
*Pope v. Rake's Adm'r*, 7 Ala. 161; *Gordon v. Tweedy*, 71 Ala.
202; *Galley v. Galley*, 14 Nebr. 174; Browne on Stat. Frauds,
§ 116, notes; Bishop on Contracts, § 634. (3.) The promise
to make a will can not be specifically enforced, of course,
but the court can cancel the deed, or decree compensation,
and charge it as a lien on the land.

E. D. WILLETT, and J. C. JOHNSTON, *contra.*—(1.) The bill
seeks to enforce a parol trust in lands, which is void under
the statute.—Code, § 1845; *Patton v. Beecher*, 62 Ala. 593;
*Brock v. Brock*, 90 Ala. 86; *White v. Farley*, 81 Ala. 567.
(2.) The deed recites a valuable consideration, and its reci-
tals can not be varied by parol proof in the absence of fraud
or mistake.—*Hubbard v. Allen*, 59 Ala. 296; *Murphy v. Branch
Bank*, 16 Ala. 90; *Patton v. Beecher*, 62 Ala. 588; *Brock v.
Brock*, 90 Ala. 86. (3.) There is a total absence of proof of
fraud in the procurement and execution of the deed, and
subsequent fraud, if proved, which is denied, would not

invalidate it.   (4.) The terms of the alleged promise, as proved by the different witnesses, are uncertain and contradictory.   (5.) The evidence shows that the deed was executed by the grantor in fraud of his creditors, and he can have no relief against it, nor based on it.

THORINGTON, J.—The bill in this cause was filed by appellant against the appellees, as the heirs at law of their mother, Mrs. Mattie E. Manning, and seeks relief from the effects of a deed executed by appellant to the mother of appellees under the following circumstances :

In 1868, appellant, who was without children, intermarried with Mattie C. Atkinson, a widow with two minor children, John and Minnie F. Atkinson, and during that year conveyed to Jeptha Sterling, as trustee for his wife, a certain tract of land then owned by him, containing about twelve hundred acres.   The consideration recited in the deed is, that the grantor was justly indebted to his wife "in the sum of two thousand dollars principal, for that amount of money and property received by the said David Manning from the estate of the father of said Martha, which money and property belonged to, and were and are, the separate statutory estate of the said Martha under the Code of Alabama, and which money and property said David Manning, the husband of said Martha, appropriated and converted to his own use.   In payment and discharge of said sum, he, the said David Manning, has bargained, sold and conveyed," &c.   The deed further recites that it conveys the property to Jeptha Sterling, in trust for "the sole and separate use, benefit and behoof of the said Martha J. Manning, free from any claim or claims whatsoever of him, the said David Manning, or his assigns; and the said Martha, wife aforesaid, becomes and is a party to this deed, and as evidence that she accepts the property hereby and herein conveyed in full satisfaction and discharge of her said debt against the said David Manning, husband aforesaid."

The appellant claims that, notwithstanding the recitals contained in the deed of a valuable consideration, of the character therein specified, he executed the deed as the result of his wife's urgent importunities, and upon her promise that she would thereupon execute her will by which she would bequeath and devise to him one-third of all her property, including one-third of said lands, and the remaining two-thirds to her two children, Minnie and John; and that the real and moving consideration of the deed was this promise on the part of his wife.

[Manning v. Pippen.]

The deed was made in 1871, and Mrs. Manning died in 1884, without ever having executed a will. She left surviving her, as her heirs at law, the appellee, Minnie F. Pippen, and the other appellees, who are the children of John Atkinson, he having died before the bill was filed. Appellant, at various times after the execution and delivery of said deed, requested his wife to execute her will pursuant to her said promise, but she declined to do so. After her death, appellees instituted a real action in the nature of ejectment against appellant, who continued in possession of the land after his wife's death; and this suit was enjoined under the bill in this cause. Demurrers to the bill were sustained in the Chancery Court, and the cause was brought to this court by appeal, and was here reversed and remanded. The case is reported in 86 Ala. 357.

In the consideration given the cause by this court on that appeal, it was assumed, on demurrer, that the promise of Mrs. Manning to execute her will as alleged in the bill was in writing. After the reversal of the cause in this court, the defendants filed additional demurrers and answers, which last denied the material allegations of the bill, and among the other defenses setting up specially the statute of frauds. Testimony was taken, and the cause submitted on the pleadings and proof for final decree. The chancellor rendered a decree denying relief to complainant, and dismissing his bill; and from that decree appellant appeals to this court.

The bill and the amendments treat in two different aspects the promise of Mrs. Manning to revest the title to the property in appellant by her will: *first*, as a mere promise to will the property back to appellant in consideration of the deed, and a breach of that promise, after condition performed by appellant; *second*, that the promise was a mere artifice on Mrs. Manning's part, resorted to by her to procure the execution of the deed by her husband, with the fraudulent intent not to comply with her promise, and by means whereof she did procure the execution of the deed, and afterwards refused to comply with her promise, until her death rendered such compliance impossible.

We decline consideration of the question urged by counsel for appellees, whether the bill and amendments present two inconsistent and repugnant grounds for relief, or, in other words, whether the amendment is a departure from the original bill, and makes a new case, for the reason that the conclusion we have reached on the merits of the case renders that question immaterial.

[Manning v. Pippen.]

Section 1845 of the Code of 1886 declares: "No trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, except by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney lawfully authorized thereunto in writing." This section is identical with section 2199 of the Code of 1876, which was elaborately considered by this court in the case of *Patton v. Beecher,* 62 Ala. 579; and the principle announced in that case has frequently been recognized, and expressly re-affirmed by subsequent decisions of this court. That decision, among other things, clearly affirms that the mere parol promise by the grantee in a deed, or a devisee in a will, that he will hold for the use of, and reconvey to the grantor or devisor, on request, or on a specified contingency, is a trust which the statute requires to be created or declared in writing. That such a promise would be inoperative under the statute of frauds, is too well settled now to be questioned.

In 2 Pom. Eq. Juris. § 1054, it is said: "There are a few cases which seem to hold that a trust will arise, under these circumstances, from a *mere verbal promise* of the devisee or legatee to hold the property for the benefit of another person. This position, however, is clearly opposed to settled principle." The case of *Barrell v. Hanrick,* 42 Ala. 60, was one of the few cases of this class referred to by the above named author; but the doctrine it asserted was expressly repudiated by this court in *Patton v. Beecher, supra,* and the case has ceased to be of authority in this State on the question under consideration.—*Patton v. Beecher, supra; Manning v. Pippen,* 86 Ala. 357; *Brock v. Brock,* 90 Ala. 86.

To meet the plea of the statute of frauds, appellant invokes the principle, as stated in brief of counsel, that "When everything is done under a verbal contract for the sale of lands, except the payment of money, the purchaser can not set up the statute of frauds to avoid the purchase, or to avoid the payment of the purchase-money;" and in support thereof the case of *Rakes v. Pope,* 7 Ala. 161, and decisions of other States to the same effect, are cited.

The doctrine here invoked by appellant's counsel is applicable to sales of goods or chattels under a verbal promise not to be performed within one year, and where the property has been delivered under the promise; and it may also have application to sales of land in jurisdictions where there is no statute, such as in this State, prescribing in specific terms what shall constitute such a part performance

of the verbal contract as will take the case without the operation of the statute of frauds.

The decision in the case of *Rakes v. Pope*, cited by appellant's counsel, is predicated upon the sale of a horse in October, 1837, upon the promise of the buyer to pay the seller $1,000 on December 25, 1837, $2,000 on December 25, 1838, and $2,000 on December 25, 1839. The contract was verbal, no note or memorandum being made and signed. The horse was delivered at the time of the sale, and an action being brought by the owner to recover an installment of the purchase-money, which, by the terms of the contract, was not to be paid within twelve months from the sale, this court, reversing the ruling of the court below, held that the delivery of the horse by the seller relieved the case from the influence of the statute. There is nothing in this case, or in the other cases cited by counsel, that furnishes a rule of decision for the case at bar. Indeed, to extend this principle to verbal sales of lands, would be in direct contravention of the statute of this State, which declares void "every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, *unless the purchase-money or a portion thereof, be paid, and the purchaser be put in possession of the land by the seller.*"—Code, 1886, § 1732, subd. 5.

The words above italicized create the exception of the only parol contract for the lease or sale of lands which can be withdrawn from the general words of the statute; and in order to bring a case within the exception, two facts must concur—the payment of the purchase-money, or a part thereof, and the placing of the purchaser in possession; and these two facts must be in pursuance of the contract. Neither the possession without payment of the whole or a part of the purchase-money, nor the payment of the purchase-money or part thereof without the letting into possession, will meet the requirements of the statute.—*Heflin v. Milton*, 69 Ala. 354.

We proceed now to consider that phase of the case presented by the amendment to the bill, in which it is set up as a distinct ground of relief that the execution and delivery of the deed by appellant to his wife was procured by her artifice and deception; that she induced appellant to make the deed to her by promising to make her will, at once, bequeathing to him one-third of all her property, including one-third of the lands conveyed to her by the deed, which promise she, at the time of making it, had no intention of

performing. This aspect of the case depends on different principles from those we have discussed.

It may be said generally, that whenever the legal title to property, real or personal, is obtained under circumstances amounting to actual fraud, or which render it unconscientious for the holder of the legal title to retain the beneficial interest, equity impresses a constructive trust on the property so acquired, in favor of the one who has been thus deprived of his property, and who is truly and equitably entitled to the same. In such cases, equity has jurisdiction to follow the property in the hands of the original wrong-doer, or in the hands of any subsequent holder, except a purchaser who has acquired it in good faith and without notice. Equity fixes upon such wrong-doer the character or *status* of a trustee *ex maleficio*, or *ex delicto*, and he may be held liable as such whenever necessary for obtaining complete justice, notwithstanding the law may also give a remedy in damages against him.

In 2 Pom. Eq. Juris. § 1055, that author says: "A second well settled and even common form of trusts *ex maleficio* occurs, wherever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specific purpose—as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like—and having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained, is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement." And in section 1056 of the same work it is said: "The foregoing cases should be carefully distingushed from those in which there is a *mere* verbal promise to purchase and convey land. In order that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be abrogated. There must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated." The doctrine of the text is fully supported by the decisions of this court.—*Patton v. Beecher*, 62 Ala. 579; *White v. Farley*, 81 Ala. 563; *Manning v. Pippen*, 86 Ala. 357; *Brock v. Brock*, 90 Ala. 86.

Applying the principles above announced to the facts of this case, we must hold that appellant is not entitled to any relief based on the mere verbal promise of Mrs. Manning; that such promise is void under the statute of frauds, and that it has not been executed within the meaning of the exception to the statute.

Whether or not relief can be afforded upon the other theory of the case—viz., that which imputes to Mrs. Manning the fraudulent purpose of procuring from her husband the execution of the deed by means of her verbal promise to will one-third of the property back to him, which promise she had no intention, at the time of making it, to perform—requires a careful review of the pleadings and testimony; and the inquiry must be pursued subject to the universally accepted rule, that a parol trust will not be engrafted on a legal title, evidenced by an instrument of conveyance absolute on its face, except with the greatest caution, and where the fraud necessary to give rise to the trust is established by clear and convincing proof; and, it may be added, when relief is seasonably sought after discovery of the fraud.

In *James v. James,* 55 Ala. 534, it was said by this court: "But by no mere general averment of ignorance can a party account for long delay and acquiescence. By distinct averments he must show why he was so long ignorant, and acquit himself of all knowledge of facts which would put him on inquiry. He must show how and when he first came to a knowledge of the facts, or the court may justly refuse to consider his cause on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer."

The averment in the bill is, that "the said Mattie C., at the time she made said promise, well knew it was not her intention to make such will, but she resorted to this promise as artifice to induce your orator to make said deed, with no intention of complying therewith; and the fact that it was her intention at the time not to comply with her said promise to make such will, and that she was employing a mere stratagem, and the evidence of such intention, did not become known to your orator until he filed his original bill in this cause, though he made repeated and diligent inquiry in reference thereto, never suspecting fraud."

These averments of the bill do not meet the strict requirements of the rule—they fail to show how the discovery of the alleged deception was made; and for this reason, the court has no means of determining that such discovery might not have been made sooner.

[Manning v. Pippen.]

The bill in this case was not filed until about nineteen years after the execution of the deed. Mrs. Manning lived about sixteen years after the transaction, and the proof shows that during her life-time appellant often requested her to execute her will according to her promise, and that she invariably refused to do so. There is absolutely nothing in the testimony to show that appellant discovered any fact or facts bearing upon or illustrating Mrs. Manning's original design in making the promise, of which he was not informed, or might not have been informed, shortly after he made the deed. In this respect, the case is presented differently now from what it was on the former appeal. *Then,* the bill contained no averment of the time when, according to the promise of Mrs. Manning, she was to execute her will in favor of appellant, and, in the absence of such an averment, this court held she had her life-time in which to do so, and that there was no actionable breach of her promise until she died without having complied with the promise. *Now,* the allegation in the bill, as amended, is, that the deed was made on the promise of Mrs. Manning that she would, in consideration of the deed, "*at once* make and execute her said will," &c.

According to the testimony, appellant, in a very short time after he made the deed, from time to time, requested his wife to execute her will pursuant to her promise, and she uniformly declined to do so. If, as claimed by the appellant, the promise was made by the wife as a mere artifice, or fraudulent scheme, to procure the deed, and without any intention of executing the will, and that the refusal of the wife to comply is evidence of her original purpose to practice fraud upon the husband; then appellant was as fully informed of such fraud on her part by her first refusal to execute the will, as he was at the end of the nineteen years when he brought his suit; for, after a careful examination of the testimony, we find nothing tending to support this claim of appellant, except the mere refusal of Mrs. Manning to comply with her promise. At all events, there is no fact or circumstance touching that subject of which appellant was not informed, or might not have known, shortly after making the deed. So far as the testimony shows to the contrary, and according to the averments of the amendment to his bill that the will was to be executed at once, the court is unable to perceive why this bill might not have been filed many years ago, while Mrs. Manning was in life, and when all the circumstances were fresh in the minds of the witnesses.
35

We are not to be understood, however, as intimating that the mere subsequent refusal of Mrs. Manning to comply with her promise would, of itself, furnish sufficient evidence of a formed purpose or design on her part, at the time of the execution of the deed by her husband, to employ the promise as a stratagem by which she should secure the deed with no intention of complying with the promise. The law is to the contrary. It is clear, under the authorities, that the mere breach of a verbal promise of this kind, standing alone, although it may be a moral wrong, is not sufficient to establish that fraud in procuring the title which would render the grantee, or devisee, a trustee *ex malificio.* "The true rule seems to be, that there must have been an original misrepresentation, by means of which the legal title was obtained; and an original intention to circumvent, and get a better bargain, by the confidence reposed."—Browne on Stat. of Frauds, (3d ed.) § 94. Such breach is a circumstance to be considered in connection with the other facts of the case going to prove fraud; but, standing alone, it can not be regarded as conclusive of the existence of evil or fraudulent intent at the time of the promise.—*Brock v. Brock,* 90 Ala. 86.

While there is an absence of proof, other than the mere subsequent breach by Mrs. Manning of her promise, to show that, at the time of making the promise, she did not intend to fulfill it, there is some testimony which, while not conclusive of that question, tends to show that it was her intention at that time to perform such promise. The witness Boone, who was the officer before whom the deed was signed and acknowledged, swears that on the day the deed was signed, and immediately thereafter, Mrs. Manning followed witness to the entry, or door of the house where the signing occurred, and, after explaining to him the object of the deed, she requested him to write her will, which he consented to do at any time. There were several other persons present, but this was said to witness apart from the others, without any effort to attract their attention thereto, and, so far as appears to the contrary, the request was but the expression of her real desire or purpose, and not a cunning attempt to manufacture testimony for herself. Furthermore, giving full weight to all the testimony, it is far from clear that appellant made the deed relying solely on the promise of Mrs. Manning as an inducement thereto; there is testimony of strong probative force that the deed was not made on the faith of the promise, but on other consid-

erations, and that the promise was only an incident to the main transaction.

The solemn recitals in the deed of a valuable consideration, [the particularity with which such consideration is described, as shown by the statement of facts hereinabove set forth, the acknowledgment required in the deed of Mrs. Manning that the conveyance was accepted by her in full satisfaction of the debt described in the deed, the facts in proof showing that appellant had previously received from the estate of Mrs. Manning's father, as her share of such estate, a sum of money which approximated, if it did not equal, the amount expressed as the consideration of the deed, and the further fact, as also shown by the proof, that appellant owed debts, at the time of making the deed, one of which, at least, was in judgment, present an array of concurring facts and circumstances which render it equally, if not more probable, that the deed was based on other considerations, and not on the faith of Mrs. Manning's promise. We do not overlook the fact that appellant himself testifies, that he turned over to his wife the money he received from her father's estate; but this part of his testimony was objected to, and the objection was well taken. Section 2765 of the Code rendered him incompetent to testify to that fact, and appellant made no effort to prove it otherwise.

"It is a general, if not universal rule, that a plaintiff in an action at law, or a complainant in a suit in equity, assumes the burden of proving every affirmative fact essential to his right of recovery. No material fact is presumed ; and the rule is general, in courts of law and in equity, that a party relying upon fraud, must aver it with certainty, and must prove it as averred."—*Thames v. Rembert's Adm'r*, 62 Ala. 567. It can not be affirmed of this case that appellant has brought himself within the scope of the rule, either in the matter of averment or proof.

The want of correspondence between the averments of the bill and appellant's proof in still another respect is fatal to any relief the court could afford him, according to the rule laid down by this court on the former appeal. It was there held that the court of chancery being without power to compel the execution of a will, specific performance of the agreement could not be enforced, but that equity would charge the land with a trust, in the nature of unpaid purchase-money, for the indemnification of the vendor, to the extent he has suffered from the breach of Mrs. Manning's promise. The averment in the bill is that Mrs. Manning

promised to devise to appellant one-third of all her property, including one-third of the land in controversy. The testimony of the witness Boone is that Mrs. Manning promised to devise to appellant *all* the lands conveyed by the deed, *to be held by him for life*, with remainder to Mrs. Manning's children. The witness Ide Hinton, in answer to the direct interrogatories, testifies that Mrs. Manning's promise was "to make a will in favor of appellant, giving him back the lands if he outlived her;" while in answer to the cross-interrogatories he testifies that *one-half* of the land was to be devised to appellant by Mrs. Manning, and the other half to her two children. The witness Alex. Hinton testifies that the promise was to devise *the entire land* to appellant, without any condition or limitation; and to the same effect is the testimony of some of the other witnesses. These are all witnesses examined at the instance of appellant, and their depositions were offered in evidence by him.

It is impossible for the court to determine from the testimony which of these witnesses states the terms of the agreement correctly, and consequently it can not be ascertained to what extent appellant has suffered from the alleged breach of Mrs. Manning's promise, nor what sum would afford "indemnification for the vendor." With the testimony in this plight, the court can not undertake to fix the measure of relief to be afforded appellant, even if in other respects the facts and circumstances warranted relief.

The decree of the chancellor is affirmed.